Randi W. Singer, Esq.
(randi.singer@weil.com)
Sarah Ryu, Esq.
(sarah.ryu@weil.com)
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000
Fax: (212) 310-8007
*Attorneys for Non-Party Twitter, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HERBALIST & ALCHEMIST, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ALURENT PRODUCTS, INC. and WILL CLARENT,<br><br>Defendants. | 1:16-cv-09204-ER |

**NON-PARTY TWITTER, INC.'S MEMORANDUM OF LAW**
**IN RESPONSE TO ORDER TO SHOW CAUSE**

## TABLE OF CONTENTS

Page

INTRODUCTION .......... 1

FACTUAL BACKGROUND .......... 1

ARGUMENT .......... 3

I. Twitter Is Not Acting In Concert Or Participation With Defendants As Required By Federal Rule Of Civil Procedure 65(d)(2) .......... 3

II. Twitter Should Not Be Sanctioned For Declining To Remove The Reported Content .......... 5

CONCLUSION .......... 6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alemite Mfg. Corp. v. Staff*,
42 F.2d 832 (2d Cir. 1930) ....................3

*Arista Records, LLC v. Tkach*,
122 F. Supp. 3d 32 (S.D.N.Y. 2015) ....................5

*Blockowicz v. Williams*,
630 F.3d 563 (7th Cir. 2010) ....................3, 4, 5

*Blockowicz v. Williams*,
675 F. Supp. 2d 912 (N.D. Ill. 2009) ....................4

*Paramount Pictures Corp. v. Carol Pub. Grp., Inc.*,
25 F. Supp. 2d 372 (S.D.N.Y. 1998) ....................3

## INTRODUCTION

In its papers, Plaintiff misstates Twitter's relationship to the Defendants and to this lawsuit by calling Twitter a "Third Party *Agent*" and asserting that Twitter is "acting in concert" with Defendants. Twitter is not, and has never been, an "agent" of Defendants. Nor is it "in active concert or participation" with Defendants in any way, and Twitter certainly has not aided and abetted any violation by Defendants of the injunction issued by this Court. Rather, Twitter is a passive service provider which is not a party to this matter and has taken no steps to prompt or otherwise assist the Defendants' violation. Federal Rule of Civil Procedure 65(d)(2) therefore precludes enforcement of the injunction against non-party Twitter.

Accordingly, Twitter respectfully requests that this Court decline to issue Plaintiff's proposed order [Dkt. No. 34] or any order that would improperly purport to bind non-party Twitter or impose sanctions on Twitter for noncompliance.

## FACTUAL BACKGROUND

Non-party Twitter operates a global Internet platform for public self-expression and conversation in real time. Twitter does not itself create content, but it has democratized content creation and distribution by providing automated tools that allow people to consume, create, distribute, and discover content. *See* Declaration of Damien Kieran dated August 7, 2017 ("Kieran Decl.") ¶ 2. Twitter's service can be accessed at twitter.com, on a variety of mobile devices and via SMS. Users with a Twitter account can use Twitter's automated systems to create and post "Tweets"—messages of 140 characters or less, sometimes with pictures or video—to anyone who has chosen to "follow" that user. *See id.* ¶ 3. Those followers may, in turn, use Twitter's automated systems to "retweet" those messages to their own followers. Users can include hashtagged (#) keywords in their Tweets to facilitate searching for messages on the same topic. *See id.* These automated tools enable users to do everything from track the Arab

Spring in real time, to argue with fellow Giants fans about whether to pull a struggling pitcher, to announce the birth of a child to family and friends. Each day, Twitter users utilize Twitter's automated platform to send and receive hundreds of millions of Tweets touching on every conceivable topic. Twitter users create these Tweets and without involvement or review by Twitter. *See id.* ¶ 4. Before users can post using Twitter's platform, they must agree to comply with Twitter's terms of service, available at https://twitter.com/en/tos, which include a statement that users are solely responsible for the Content that they provide and are expected to comply with applicable laws, rules, and regulations and respect the intellectual property rights of others. *See id.* ¶ 5.

On March 8, 2017, the Court issued a default judgment against Defendants, finding them liable for trademark infringement and broadly enjoining them from infringing Plaintiff's trademark or engaging in infringing activity. (Dkt. No. 28). As Defendants have apparently failed to comply with this injunction, Plaintiff now seeks an order specifically directing Defendants to remove certain content and seeking sanctions for Defendants' failure to do so. (Dkt. No. 34). Twitter takes no position with respect to the scope of the injunction as it relates to Defendants or the imposition of sanctions on Defendants.

However, Plaintiff's proposed injunction would require Defendants' alleged "third party agents, Facebook, Amazon, Twitter, Idweeds, Groupon, CBDDiagnosis, Supplement Police, Supplement Journal, Nfinx, Inc., YouTube and AT&T ("Third Party Agents") to immediately takedown any infringing material, including and without limitation the sale and advertisement of infringing products on their websites." (Dkt. No. 34). Additionally, it would "hold[] . . . the Third Party Agents in civil contempt if they fail to comply with this Order within ten (10) days" and "sanction[] . . . the Third Party Agents for their contempt in an amount to be determined

upon motion to the Court." *Id.* Twitter therefore objects to the proposed injunction (and any resulting enforcement or sanctions) to the extent that it exceeds the scope of Rule 65(d)(2) by purporting to require Twitter to take any actions.

## ARGUMENT

### I. TWITTER IS NOT ACTING IN CONCERT OR PARTICIPATION WITH DEFENDANTS AS REQUIRED BY FEDERAL RULE OF CIVIL PROCEDURE 65(D)(2)

Federal Rule of Civil Procedure 65(d)(2) provides that an injunction "binds only the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are *in active concert or participation with* anyone described in Rule 65(d)(2)(A) or (B)." Fed. R. Civ. P. 65(d)(2) (emphasis added). This limited circle of persons identified in the rule reflects the principle that a court cannot "lawfully enjoin the world at large, no matter how broadly it words its decree." *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832 (2d Cir. 1930) (Hand, J.). Accordingly, a non-party may be bound by an injunction only if it "aids or abets [the] enjoined party in violating the injunction." *Blockowicz v. Williams*, 630 F.3d 563, 567 (7th Cir. 2010) (internal quotation marks omitted); *see also Paramount Pictures Corp. v. Carol Pub. Grp., Inc.*, 25 F. Supp. 2d 372, 374 (S.D.N.Y. 1998) (same).

In *Blockowicz v. Williams*, the plaintiffs sought and obtained a permanent injunction enjoining the defendants from making defamatory statements on several websites, including www.ripoffreport.com ("ROR"). *Blockowicz*, 630 F.3d at 564-65. When defendants failed to respond to or comply with the injunction, plaintiffs requested that the website operators remove the defamatory statements from their sites; ROR did not comply. *See id.* at 565. Plaintiffs then sought to compel ROR's compliance with the injunction pursuant to Rule 65(d), arguing that, based on ROR's Terms of Service, ROR was "in active concert or participation with" defendants

in their violation of the injunction. *See Blockowicz v. Williams*, 675 F. Supp. 2d 912, 915-16 (N.D. Ill. 2009) ("[T]he Blockowiczs argue that Xcentric's ongoing promise to publish and never remove the defamatory statements in exchange for indemnification and an exclusive copyright license to those statements [pursuant to the Terms of Service] demonstrates that Xcentric is in active concert or participation with Defendants."). Both the district court and the Seventh Circuit disagreed that ROR had violated the injunction by declining to remove the content at issue; the Seventh Circuit specifically noted that, by definition, actions that aid and abet defendants in violating the injunction "must occur *after* the injunction is imposed." *See Blockowicz*, 630 F.3d at 568 (emphasis added). Finding no evidence that ROR had any contact with the defendants after the injunction was issued or that ROR had taken any steps to work with the defendants to violate the injunction, the appeals court held that ROR was outside the scope of Rule 65(d)(2).

As a neutral service provider that has not aided or abetted Defendants in any way, let alone in any alleged violation of the injunction, Twitter is similarly outside the scope of Rule 65(d)(2). Twitter had no role in the creation of any of the content at issue and did not take any actions to assist Defendants in their allegedly infringing activities either prior to or after the injunction issued on March 8, 2017. *See* Kieran Decl., ¶¶ 6-7. Indeed, Plaintiff implicitly concedes as much when it complains that Twitter did not take any action. *See* Declaration of Monica P. McCabe In Support Of The Order To Show Cause To Enforce Violations Of A Court Order And Permanent Injunction (Dkt. No. 36) ¶ 23 (alleging that ""Twitter responded that Defendants' @herbalalchemis account did not violate Twitter's trademark policy, and that it would not take any action"); Memorandum of Law in Support of Plaintiff's Motion, by Order to Show Cause, for Contempt for Violations of a Court Order and Permanent Injunction and to Enforce Compliance (Dkt. No. 35) at 9, 12-13. Without any legal obligation to act, non-party

Twitter's inaction is insufficient to bring Twitter into the ambit of Rule 65(d)(2) and subject it to Plaintiff's proposed order or any similar order purporting to bind Twitter. *See Blockowicz*, 630 F.3d at 568 (finding that "mere inactivity is simply inadequate to render [non-parties] aiders and abettors in violating the injunction."); *cf. Arista Records, LLC v. Tkach*, 122 F. Supp. 3d 32, 36-37 (S.D.N.Y. 2015) (finding that a domain register which received notice of the injunction but subsequently permitted a new incident of infringement to occur provided services that went beyond "passive hosting of content" because it had taken actions that facilitated defendants' violation of the TRO *subsequent* to receiving notice). Moreover, any argument that Twitter has a legal obligation to remove the reported content simply because it is possible to do so, (Dkt. No. 35 at 15-16), should be rejected; declining to exercise a technological capability in the absence of any legal requirement to do so is not aiding and abetting a violation of the injunction. *Blockowicz,* 630 F.3d at 568. Any requirement that non-party service providers act under such circumstances would upset the careful balance of the Internet ecosystem created over time by Congress and the courts.

## II. TWITTER SHOULD NOT BE SANCTIONED FOR DECLINING TO REMOVE THE REPORTED CONTENT

Plaintiff argues that it is entitled to attorneys' fees because "Twitter knowingly violated the Court's Order in refusing to comply with taking down the infringing material." (Dkt. No. 35) at 19. While Twitter takes no position as to whether Plaintiff is entitled to attorneys' fees from Defendants, there is no basis for seeking any such award from non-party Twitter. Conclusorily alleging a willful violation does not create a legally-cognizable basis for sanctioning a non-party, particularly where, as here, Twitter had no obligation to comply with the March 8, 2017 injunction in the first place. Given Plaintiff's failure to demonstrate that Twitter is required to comply with the injunction under Rule 65(d)(2), there is no basis for sanctioning Twitter here.

**CONCLUSION**

As a non-party service provider, Twitter has no relationship with Defendants, and it has not acted in any improper way with respect to the content at issue. Plaintiff has not made any showing to the contrary. Therefore, Twitter respectfully requests that this Court decline to issue Plaintiff's proposed order [Dkt. No. 34] or any order that would improperly purport to bind non-party Twitter or impose sanctions on Twitter for noncompliance.

Dated: August 7, 2017
New York, New York

/s/ Randi W. Singer
Randi W. Singer, Esq.
Sarah Ryu, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
randi.singer@weil.com
sarah.ryu@weil.com
*Attorneys for Non-Party Twitter, Inc.*