**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HERBALIST & ALCHEMIST, INC., | Case No. 1:16-cv-09204 (ER) |
| Plaintiff, | |
| v. | Hearing:  August 18, 2017 |
| ALURENT PRODUCTS, INC. and WILL CLARENT, | Time:  2:30 pm<br>Place:  Courtroom 619 |
| Defendants. | |

**YOUTUBE LLC'S MEMORANDUM OF LAW IN OPPOSITION**
**TO PLAINTIFF'S MOTION, BY ORDER TO SHOW CAUSE,**
**FOR CONTEMPT FOR VIOLATIONS OF A COURT ORDER**
**AND PERMANENT INJUNCTION AND TO ENFORCE COMPLIANCE**

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ....................................................................................................1

BACKGROUND .............................................................................................................................2

    A.    YouTube Offers A Free Video Hosting Service.................................................2

    B.    YouTube Respects Trademark And Intellectual Property Rights.........................2

    C.    Herbalist & Alchemist Did Not Provide YouTube With The Necessary Information For YouTube To Remove Videos...........................................4

ARGUMENT ..................................................................................................................................7

I.    THE DEFAULT JUDGMENT INJUNCTION DOES NOT APPLY TO NON-PARTY YOUTUBE ...............................................................................................7

    A.    YouTube Is Neither An Agent Of, Nor Acting In Concert With, Defendants. ................................................................................................7

    B.    The Default Judgment Injunction Is Too Vague To Enforce Against YouTube. ...............................................................................................9

II.    CONTEMPT SANCTIONS ARE NOT WARRANTED...............................................14

    A.    Plaintiff Did Not Satisfy The Test For Imposing Contempt Sanctions. ...............14

        1.    The Default Judgment Is Not Clear And Unambiguous Concerning Video Content On YouTube. ..........................................14

        2.    Plaintiff Did Not Prove By Clear And Convincing Evidence That YouTube Did Not Comply With Any Obligation Imposed By The Default Judgment Injunction........................................15

        3.    Plaintiff Did Not Establish That YouTube Did Not Act With Reasonable Diligence And Energy. ...........................................16

    B.    Plaintiff Did Not Comply With Local Rule 83.6..................................................17

    C.    Plaintiff's Application As To YouTube Is Moot Because All Identified Videos Have Been Removed. ...........................................................18

III.    NO MONETARY SANCTION AGAINST YOUTUBE IS PERMISSIBLE ON THIS RECORD ..........................................................................................19

CONCLUSION.............................................................................................................................20

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*Abercrombie & Fitch Co. v. Hunting World, Inc.*,
537 F.2d 4 (2d Cir. 1976)................................................................... 12

*Advance Magazine Publishers, Inc. v. Norris*,
627 F. Supp. 2d 103 (S.D.N.Y. 2008)................................................ 16

*Alemite Mfg. Corp. v. Staff*,
42 F.2d 832 (2d Cir. 1930).................................................................. 7

*Architempts, Inc. v. Architemps, Ltd.*,
704 F. Supp. 39 (S.D.N.Y. 1988) ....................................................... 11

*Arista Records, LLC v. Tkach*,
122 F. Supp. 3d 32 (S.D.N.Y. 2015)................................................ 9, 20

*Beck Chevrolet Co., Inc., v. General Motors LLC*,
No. 11-cv-2856, 2011 WL 13156875 (S.D.N.Y. Jun. 15, 2011)..................... 19

*Blockowicz v. Williams*,
675 F. Supp. 2d 912 (N.D. Ill. 2009) ............................................... 8, 9

*Blockowicz v. Williams*,
630 F.3d 563 (7th Cir. 2010) .......................................................... 8, 9

*Brown v. Quiniou*,
744 F. Supp. 463 (S.D.N.Y. 1990) ................................................... 10

*Drywall Tapers & Pointers v. Local 530*,
889 F.2d 389 (2d Cir. 1989)............................................................ 14

*Fischer v. Forrest*,
No. 14-cv-1304, 2017 WL 2992663 (S.D.N.Y. Jul. 14, 2017)..................... 19

*Friesland Brands, B.V. v. Vietnam Nat. Milk Co.*,
228 F. Supp. 2d 399 (S.D.N.Y. 2002)............................................... 12

*GTFM, LLC v. Universal Studios, Inc.*,
No. 02-cv-0506, 2006 WL 1377048 (S.D.N.Y. May 16, 2006) ................ 13

*Guthrie Healthcare Sys. v. ContextMedia, Inc.*,
826 F.3d 27 (2d Cir. 2016)............................................................. 12

*Hammer v. Trendl*,
No. 02-cv-2462, 2002 WL 32059751 (E.D.N.Y. Oct. 10, 2002), *report and recommendation adopted* 2003 WL 21466686 (E.D.N.Y. Jan. 18, 2003) ........................ 7

*Harris ex rel. Beare v. Millington*,
No. 2007-cv-3391, 2012 WL 2906017 (E.D.N.Y. Jul. 16, 2012)...................................17

*Heyman v. Kline*,
444 F.2d 65 (2d Cir. 1971)........................................................................................7

*ITC Ltd. v. Punchgini, Inc.*,
482 F.3d 135 (2d Cir. 2007) *further affirmed following certified state law
question*, 518 F.3d 159 (2d. Cir. 2008) ...............................................................11

*Kelly-Brown v. Winfrey*,
95 F. Supp. 3d 350 (S.D.N.Y. 2015), *aff'd on other grounds*, 659 F. App'x 55 (2d
Cir. 2016), *cert. denied*, 137 S. Ct. 1098 (2017)...............................................16

*Merrill Lynch Inv. Managers v. Optibase, Ltd.*,
337 F.3d 125 (2d Cir. 2003)....................................................................................8

*N.Y. City Dist. Council of Carpenters Pension Fund v. G & M Drywall Sys. Inc.*,
No. 07-cv-1969, 2010 WL 2291490 (S.D.N.Y. Jun. 1, 2010).........................................18

*ONE11 Imports Inc. v. NuOp LLC*,
No. 16-cv-7197, 2016 WL 7338422 (S.D.N.Y. Dec. 19, 2016) .............................7, 8, 9

*Paramount Pictures Corp. v. Carol Publ'g Grp., Inc.*,
25 F. Supp. 2d 372 (S.D.N.Y. 1998).......................................................................15

*Parker v. Google Inc.*,
422 F. Supp. 2d 492 (E.D. Pa. 2006) .........................................................................8

*People of State of N.Y. by Vacco v. Operation Rescue Nat'l*,
80 F.3d 64 (2d Cir. 1996)........................................................................................7

*Polaroid Corp. v. Polarad Electronics Corp.*,
287 F.2d 492 (2d Cir. 1961).....................................................................................12

*Polymer Technology Corp. v. Mimran*,
975 F.2d 58 (2d Cir. 1992).....................................................................................16

*Sanders v. Air Line Pilots Ass'n, Int'l*,
473 F. 2d 244 (2d. Cir. 1972)..........................................................................10, 13, 14

*Sellify Inc. v. Amazon.com, Inc.*,
No. 09-cv-10268, 2010 WL 4455830 (S.D.N.Y. Nov. 4, 2010)........................................8

*Star Indus., Inc. v. Bacardi & Co.*,
412 F.3d 373 (2d Cir. 2005)..............................................................................11, 12

*Stokely-Van Camp, Inc. v. Coca-Cola Co.*,
646 F. Supp. 2d 510 (S.D.N.Y. 2009).......................................................................19

*Tiffany Inc. v. eBay Inc.*,
600 F.3d 93 (2d Cir. 2010)......................................................................................13

iii

*Trustees of Columbia Univ. v. Columbia/HCA Healthcare Corp.*,
    964 F. Supp. 733 (S.D.N.Y. 1997) ................................................................. 10

*Viacom Int'l Inc. v. Youtube, Inc.*,
    718 F. Supp.2d 514, 524 (S.D.N.Y. 2010) *reiterated on remand at* 940 F. Supp.
    2d 110 (S.D.N.Y. 2013) ............................................................................ 4

*Western Publishing Co. v. Rose Art Industries, Inc.*,
    910 F.2d 57 (2d Cir. 1990) ......................................................................... 11

*Weitzman v. Stein*,
    98 F.3d 717 (2d Cir. 1996) ......................................................................... 19

## STATUTES

Fed. R. Civ. P. 4 ........................................................................................ 17

Fed. R. Civ. P. 65 ................................................................................. 7, 14

S.D.N.Y. Local Rule 83.6 ..................................................... 1, 17, 18, 20

## OTHER AUTHORITIES

Merriam-Webster Dictionary ........................................................................ 12

Restatement (Third) Of Agency § 1.01 (2006) ............................................. 8

Nonparty YouTube LLC ("YouTube") respectfully submits this response to the Court's Order to Show Cause, entered on July 20, 2017.

## PRELIMINARY STATEMENT

Plaintiff seeks to hold YouTube, a nonparty, in contempt for non-removal of videos from its website in response to a court order.  Contempt is unwarranted here for several reasons.  To begin, YouTube is neither an agent of, nor acting in concert with, Defendants.  The order neither mentions, nor binds YouTube.  Additionally, the order did not provide specific URLs of videos to be removed; it did not identify the YouTube users who posted the videos; it did not identify the products mentioned in the videos; and it did not otherwise identify any videos to be removed. This is not a case of refusal to comply with an order, but mere uncertainty about the order's meaning and direction.  Indeed, neither the four corners of the order, nor any other evidence in the record on these contempt proceedings, clearly and convincingly establishes that YouTube did not comply with the order—or even that the Defendants in this action had anything to do with the postings of the two YouTube videos for which Plaintiff apparently seeks to hold YouTube in contempt.  And contrary to Plaintiff's implication, YouTube had no economic self-interest in leaving up the two videos complained of in Plaintiff's most recent letter—they yielded no revenue to YouTube.

It would be further improper to hold YouTube in contempt because Plaintiff has come nowhere near making the requisite showing to establish contempt, or even identifying in its contempt papers precisely how it contends YouTube violated the order.  Moreover, Plaintiff's service and Order To Show Cause papers did not comply with Local Rule 83.6.  In any event, YouTube removed the two videos identified in its June 2, 2017 letter to YouTube for not complying with other YouTube policies so the motion is now moot.

For all of these reasons, nonparty YouTube should not be held in contempt.

1

## BACKGROUND

### A.      YouTube Offers A Free Video Hosting Service.

Founded in 2005, YouTube is a video sharing platform that enables users to watch videos, upload videos, and share them, publicly or privately.  Declaration of Emily Burns ("Burns Decl.") ¶ 5.  Users create the video content hosted on YouTube, and upload more than 400 hours, on average, every minute.  *Id.* ¶¶ 5, 31.  Today, YouTube has over 1.5 billion users and over a billion available videos.  *Id.* ¶ 5.

Users who upload videos to YouTube are required to comply with YouTube's Terms of Service.  Burns Decl. ¶ 8.  The Terms of Service require that users take sole responsibility for the videos they upload and represent and warrant that they owns all of the rights needed to publish the video.  *Id.* ¶¶ 8-9, Ex. B.  The Terms of Service make clear that YouTube does not tolerate the infringement of intellectual property rights; YouTube's Trademark Policy, available online, further provides that YouTube prohibits videos and content that infringe trademarks.  *Id.* ¶¶ 8-10, Exs. B at § 6(B), (F), C at 1.

Plaintiff acknowledges that the Defendants are the actors here: it is Defendants who continue to "promot[e] [their] products through the online media platforms."  *See* Plaintiff's Memorandum of Law ("Pl. Memo."), Dkt. 35 at 2.

### B.      YouTube Respects Trademark And Intellectual Property Rights.

As YouTube makes clear in its Terms of Service and Trademark Policy, YouTube is committed to respecting the rights of trademark owners.  Burns Decl. ¶¶ 6-10, Exs. B, C.  At the same time, YouTube is also committed to the freedom of speech and ensuring that its users are free to post lawful content to YouTube.  *Id.* ¶ 15.  In balancing these interests, YouTube has established a procedure for trademark owners to complain of potentially-infringing content, and

for YouTube to assess whether material is clearly infringing and should be removed.  *Id.* ¶¶ 6, 11-17.

The reactive nature of YouTube's notice and take-down policy is by necessity.  It is not feasible or scalable for YouTube to find and disable all trademark infringing content on its own. YouTube is a passive host of user-uploaded content, and it does not have knowledge of the contents of every video on its website.  Burns Decl. ¶¶ 5, 30.  Nor does YouTube have knowledge of every trademark, even all registered trademarks.  *Id.* ¶¶ 4, 30.  Even once valid trademark rights are established, the question of infringement is complex; it is not a binary matching process.  Among other complexities, trademark rights are limited in scope both geographically and by type of good or service, referential use of trademarks is permitted, and third parties may always use words in their plain English meanings to describe their goods; it is therefore not the case that each use of a trademark by someone other than the trademark owner is infringing.  *Id.* ¶¶ 4, 15, 23-25, 30-31; *see also* Section I.B, below (discussing legal principles). And manual review of all videos uploaded to YouTube would be impossible, given that on average, 400 hours of videos are uploaded, every minute—24,000 hours of video per hour, and 576,000 hours of video every day.  *Id.* ¶¶ 4, 6, 11, 14-15, 30-31.  By necessity, YouTube relies on trademark owners and other users to identify instances of trademark infringement in YouTube user content, and to provide YouTube with information needed to determine that the content is clearly infringing another's trademark rights.  *Id.*

YouTube has a streamlined online trademark complaint form that allows trademark owners to provide the information YouTube needs to make a decision regarding whether an infringing use is clearly infringing.  Burns Decl. ¶¶ 6, 14-15, Ex. D.  YouTube also accepts "free-form" letters from trademark owners.  *Id.* ¶¶ 12, Ex. C at 1.  Given the complexity of issues in a

trademark dispute, including competing claims to a trademark based on usage or differing territorial rights, the extent and scope of a trademark's rights, and whether a user is making a legitimate or fair use of a trademark, YouTube often is not in the position to determine whether a video clearly infringes a trademark.  *Id.* ¶¶ 6, 11, 14-15, 30-31; *see also, e.g., id.*, ¶¶ 23-25. YouTube therefore often encourages trademark owners to contact alleged infringers directly for resolution of disputes.  *Id.* ¶ 11, Ex. C at 1.  In addition, when a trademark owner informs YouTube that a court has adjudicated trademark rights as between competing parties, YouTube will usually voluntarily take down videos that are specified in the court's order.  *Id.* ¶ 16.

YouTube's procedures for removing videos that violate its policies is robust.  In 2015 alone, YouTube removed 92 million videos for violation of YouTube policies "through a mix of user flagging and [YouTube's] spam-detection technology."  *Id.* ¶ 7, Ex. A at 2.  Courts have long acknowledged this robustness.  As one example in the copyright context, YouTube took down nearly 100,000 allegedly infringing videos within 24 hours after receiving notice from a content owner.  *Viacom Int'l Inc. v. Youtube, Inc.*, 718 F. Supp. 2d 514, 524 (S.D.N.Y. 2010), *reiterated on remand at* 940 F. Supp. 2d 110, 115 (S.D.N.Y. 2013).

### C.   Herbalist & Alchemist Did Not Provide YouTube With The Necessary Information For YouTube To Remove Videos.

In January 2017, before the entry of a default judgment in this action, Plaintiff used YouTube's online trademark complaint form to identify a single video that it contended was infringing its claimed HERBALIST & ALCHEMIST mark.  Burns Decl. ¶¶ 18-21.  YouTube promptly addressed that complaint: it both informed the YouTube user who had uploaded the video that a complaint had been made and requested additional information from Plaintiff regarding its usage rights to the trademark at issue, as the Plaintiff did not have a registered trademark, and it appeared the parties had competing trademark applications.  *Id.* ¶¶ 19-21.

4

Nearly a month later, Plaintiff responded to the request for additional information.  *Id.*  ¶ 21.
YouTube then informed Plaintiff that the video had been removed by the user, obviating the need
for YouTube to further assess Plaintiff's trademark complaint.  *Id.*

After the Court entered its Default Judgment Against Defendants Alurent Products Inc.
And Will Clarent ("Default Judgment") or ("Default Judgment Injunction") on March 8, 2017
(Dkt. 28), Plaintiff wrote a letter to YouTube on March 29, 2017.  Burns Decl. ¶ 22, Ex. F.
Plaintiff addressed this letter to YouTube's Copyright Agent—although Plaintiff's claim
concerned trademarks and not copyrights—and claimed that an additional three videos were
infringing.  *Id.*  The letter enclosed the Default Judgment, which did not mention YouTube, the
names of the three videos, the posters of any of the three videos, any links to the videos, or
specifically identify any other content on YouTube.  *Id.* ¶¶ 22-23, Ex. H.

One of the three identified videos was removed by the uploader before Plaintiff's
application to this Court.  Burns Decl. ¶¶ 18, 22, 27.  The other two videos referenced in the
Plaintiff's March 29, 2017 letter were uploaded by YouTube users named "Mohd Harum" and
"dfgv dfgv," who were not mentioned in the Default Judgment.  *Id.* ¶ 23.  These users did not
appear to YouTube to have any affiliation with the Defendants in this action, particularly
because the users appeared to be from outside of the United States.  *Id.*; *cf.* Complaint
("Compl."), Dkt. 8 ¶¶ 2-3 (alleging Defendants to have addresses in Nevada and California).
Additionally, the Default Judgment mentioned neither the specific products nor the specific
third-party websites referenced by the two videos, which further did not appear to be affiliated
with the Defendants according to any information from the Default Judgment.  Burns Decl. ¶ 24.
Based on its investigation YouTube could not discern from the Default Judgment that the two
videos, or the uploaders of these videos, were subject to the Default Judgment.  *Id.* ¶ 25.

Absent a clear connection between the two videos and the Default Judgment, YouTube informed Plaintiff that YouTube was unable to take action on the basis of the Default Judgment. Burns Decl. ¶ 26, Ex. H at 2.  However, YouTube explained that it may be prepared to remove on the basis of a "permanent order that requires the content creator to remove specific YouTube URLs," and that YouTube might be able to help Plaintiff identify anonymous users pursuant to valid legal process.  *Id.*  The docket in this action reflects that Plaintiff did not accept YouTube's invitation to seek a modified order that identified the specific content it wanted removed.

YouTube did not hear from Plaintiff again until June 2, when Plaintiff again addressed its letter to "DMCA Complaints."  Burns Decl. ¶ 27.  Plaintiff's June letter did not directly respond to YouTube's position regarding the lack of specificity in the Default Judgment to identify the videos to be removed; nor did the Plaintiff provide any additional information from the record that would help YouTube understand why the Default Judgment required removal of the two videos that remained online.  *Id.* ¶ 27, Ex. I.

As far as YouTube can tell, the Plaintiff's contempt application concerns the same two videos complained of in its March 29 and June 2 letters.  Burns Decl. ¶ 3.  It is difficult to know for certain because neither the Order To Show Cause For Contempt ("Order to Show Cause") (Dkt. 34) nor Plaintiff's Memorandum (Dkt. 35) submitted in support identifies any specific content on YouTube to be removed.  These two videos were viewed infrequently, and YouTube earned no revenue from them.  *Id.* ¶¶ 3, 28.  YouTube has since removed these two videos for violation of other YouTube policies.  *Id.* ¶ 29.  Thus, no YouTube video identified by Plaintiff to YouTube remains publicly accessible.  *Id.*

## ARGUMENT

### I.   THE DEFAULT JUDGMENT INJUNCTION DOES NOT APPLY TO NON-PARTY YOUTUBE

#### A.   YouTube Is Neither An Agent Of, Nor Acting In Concert With, Defendants.

The Court's March 8, 2017 Default Judgment (Dkt. 28) was not directed at YouTube, and YouTube was under no duty to comply with it.  Federal Rule of Civil Procedure 65(d)(2) provides that any injunction order "binds only the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation" with the parties and their agents.  Fed. R. Civ. P. 65(d)(2).  For a court to hold a nonparty in contempt of a court order, the nonparty "must either abet the defendant, or must be legally identified with him." *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832-33 (2d Cir. 1930) (Hand, J.) (a court "cannot lawfully enjoin the world at large"); *see also People of State of N.Y. by Vacco v. Operation Rescue Nat'l*, 80 F.3d 64, 70 (2d Cir. 1996).

YouTube is not a party, agent, or other person "in active concert or participation" with Defendants.  *See, e.g.*, *Hammer v. Trendl*, No. 02-cv-2462, 2002 WL 32059751, at *4 (E.D.N.Y. Oct. 10, 2002), *report and recommendation adopted* 2003 WL 21466686, at *4 (E.D.N.Y. Jan. 18, 2003) (declining to bind non-party Amazon to copyright injunction).  "Rule 65(d) does not grant a court power so broad 'as to make punishable the conduct of persons who act independently and whose rights have not been adjudged according to law.'" *ONE11 Imports Inc. v. NuOp LLC*, No. 16-cv-7197, 2016 WL 7338422, at *2 (S.D.N.Y. Dec. 19, 2016) (quoting *Heyman v. Kline*, 444 F.2d 65, 65-66 (2d Cir. 1971)).  Although Plaintiff conclusorily labels YouTube a "third party agent" and asserts YouTube is "in active concert or participation" with Defendants (*e.g.* Pl. Memo. at 4, 7, 12), YouTube is neither.

To be Defendants' "agent," YouTube would have needed to enter into a consensual "fiduciary relationship" whereby it agreed to "act on the [Defendants'] behalf and subject to the [Defendants'] control."  Restatement (Third) Of Agency § 1.01 (2006); *see also Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 130 (2d Cir. 2003) (citing Restatement and holding that two Merrill Lynch affiliate companies were not each other's agents despite close relationship).  No such fiduciary relationship exists.  *See* Burns Decl. ¶ 28.  Defendants are not YouTube's *principals*, if anything, they are YouTube's *users*, subject to YouTube's Terms of Service.  *Id.*  Such run-of-the-mill online agreements are not agency agreements.  *Cf. Sellify Inc. v. Amazon.com, Inc.*, No. 09-cv-10268, 2010 WL 4455830, at *3 (S.D.N.Y. Nov. 4, 2010) ("[A] reasonable user of the internet would not interpret such a tenuous 'link' between entities as firmly indicative of an agency relationship.").

YouTube is also not "in active concert or participation" with Defendants.  *See, e.g.*, *ONE11 Imports,* 2016 WL 7338422, at *2 (order could not be enforced against nonparties for whom plaintiff had not presented evidence of active concert).  Further, "[p]ersonal liability extends only to those persons who actively participate as a moving force in the decision to engage in the infringing acts or otherwise cause the infringement as a whole to occur." *Parker v. Google Inc.*, 422 F. Supp. 2d 492, 503 (E.D. Pa. 2006) (quotation omitted).  YouTube, as a passive host, has no such causal relationship to the alleged infringement.  *See, e.g.*, *Blockowicz v. Williams*, 675 F. Supp. 2d 912, 916 (N.D. Ill. 2009), *aff'd,* 630 F.3d 563 (7th Cir. 2010) (holding that third party website host not bound by injunction requiring removal of defamatory content). Assuming for the sake of argument that Defendants were the posters of the two challenged videos (a fact for which there is no evidence), their relationship with nonparty YouTube is at most "an arm's length transaction involving totally distinct entities." *ONE11 Imports,* 2016 WL

7338422, at *2 (quotation omitted).  Accordingly, the Court's injunction does not and cannot bind YouTube.

Plaintiff cites to only one decision holding in contempt a nonparty who did not scheme with a named party: *Arista Records, LLC v. Tkach*, 122 F. Supp. 3d 32 (S.D.N.Y. 2015).  There, the court's original injunction had specifically barred the third party provision of domain name services to any "grooveshark" domain.  *Id.* at 33.  The court concluded that the order bound non-party Cloudflare, a provider of authoritative domain name system servers, which had received notice of the injunction and thereafter permitted multiple "grooveshark" domains to sign up for Cloudflare's domain name services.  *Id.* at 34, 36, 38.  Even assuming *Arista* was correctly decided, YouTube's situation is distinct.  First, unlike *Arista's* specific targeting of "grooveshark" domains, the Default Judgment did not contain a comparable level of specificity regarding content for YouTube to remove, whether by identification of specific links, usernames, or specific product names.  *See* Dkt. 28.  Second, unlike the "grooveshark" sign-ups that Cloudflare permitted *after* receiving a copy of that injunction, 122 F. Supp. 3d at 35, the videos at issue here were uploaded *before* YouTube received notice of the Default Judgment.  *See* Burns Decl. ¶ 22.  Third, unlike Cloudflare's services, which were held to be "far from the passive hosting of content at issue in *Blockowicz*," 122 F. Supp. 3d at 37, YouTube is a passive host of videos.  *See* Burns Decl. ¶¶ 4-6, 8, 30-31.  YouTube's "mere inactivity is simply inadequate to render [it an] aider[] and abettor[] in violating the injunction."  *Blockowicz*, 630 F.3d at 568.

Accordingly, no authority—or evidence—supports Plaintiff's position that YouTube was an agent of Defendants or in active concert with them.

**B.     The Default Judgment Injunction Is Too Vague To Enforce Against YouTube.**

Plaintiff argues that the order "makes it clear that Defendants and their agents are

permanently enjoined from engaging in any activity that infringes, or permits the infringement of Herbalist's mark."  Pl. Memo. at 11.  However, this prohibition is "only an abstract conclusion of law" as to what is prohibited.  *Sanders v. Air Line Pilots Ass'n, Int'l*, 473 F. 2d 244, 247 (2d. Cir. 1972) (affirming decision of lower court not to enter requested injunction).  It does not provide YouTube with a clear directive about what specific content should be removed, such as specific URLs of video, videos by certain posters, or videos relating to certain products.  The Default Judgment applied only to Alurent Products, Inc. and Will Clarent; it supplied no basis for YouTube to connect the two allegedly infringing videos to either the Default Judgment or to Defendants.  *See* Burns Decl. ¶¶ 22-23, Ex. F (Plaintiff's March Letter attaching Default Judgment).  It appeared to YouTube that the two videos originated from a foreign country and were not connected to the Defendants.  *See* Burns Decl. ¶¶ 23-26.  Because "the four corners" of the Default Judgment therefore did not give YouTube information sufficient to ascertain "precisely what acts are forbidden," it is not enforceable against YouTube.  *Sanders*, 473 F.2d at 247 ("The normal standard of specificity is that the party enjoined must be able to ascertain from the four corners of the order precisely what acts are forbidden.").

Having failed to obtain an order showing a connection between the two challenged videos and the Defendants, Plaintiff seems to suggest that YouTube had an obligation to remove *any* video that Plaintiff asserted infringed its rights.  But that is inconsistent with trademark law, which does not grant trademark owners an absolute monopoly on use of a word or phrase, or guarantee "protection against all use of the [mark] on other products."  *Brown v. Quiniou*, 744 F. Supp. 463, 467-68 (S.D.N.Y. 1990) (quotation omitted).  For example, "Columbia" University's trademark co-exists with both "Columbia" healthcare and "Columbia" sportswear.  *See, e.g.*, *Trustees of Columbia Univ. v. Columbia/HCA Healthcare Corp.*, 964 F. Supp. 733, 736, 742,

746, 753 (S.D.N.Y. 1997); http://www.columbia.com/ (website of Columbia sportswear).

Additionally, trademark ownership rights are subject to geographic limitations: two parties may share rights to the same mark in different states according to priority of use, *see, e.g.*, *Architempts, Inc. v. Architemps, Ltd.*, 704 F. Supp. 39 (S.D.N.Y. 1988), and "ownership of a mark in one country does not automatically confer the owner the exclusive right to use that mark in another country," *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 155 (2d Cir. 2007), *further affirmed following certified state law question*, 518 F.3d 159 (2d Cir. 2008) (holding that "Bukhara" restaurant in New York did not infringe on trademark for "Bukhara" restaurant in India).

Under the Lanham Act, a claim of infringement entails two inquiries: (1) whether the trademark alleged to be infringed is entitled to protection; and (2) whether another's use of its mark creates a likelihood of confusion among consumers as to the origin or sponsorship of its goods. *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 37 (2d Cir. 2016). Where the plaintiff's trademark is not registered with the United States Patent and Trademark Office, courts must determine whether the mark is "sufficiently 'distinctive' to distinguish the . . . goods from those of others," or has otherwise "acquired a 'secondary meaning' in the minds of consumers." *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 381 (2d Cir. 2005). Determining the "scope of protection" of such a mark can be a "slippery business" that "necessarily turns on 'the particular context of the mark's use, the context of its time of use, and the context of its group of users.'" *Western Publishing Co. v. Rose Art Indus., Inc.*, 910 F.2d 57, 60 (2d Cir. 1990).

In determining whether there is a likelihood of confusion, courts balance eight factors identified in the Second Circuit's seminal opinion in *Polaroid Corp. v. Polarad Electronics*

*Corp.*, 287 F.2d 492, 495 (2d Cir. 1961).  *Guthrie*, 826 F.3d at 37.  This "analysis is not mechanical," *Star Indus.*, 412 F.3d at 384, and, as courts have recognized, a determination of whether there is likelihood of confusion, and therefore infringement, can be a "fact intensive" inquiry.  *See, e.g., Friesland Brands, B.V. v. Vietnam Nat. Milk Co.*, 228 F. Supp. 2d 399, 403 (S.D.N.Y. 2002).  For purposes of assessing both the validity of trademark rights and infringement, the strength of a trademark must be evaluated, including whether it is (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary or fanciful.  *E.g., Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976); *see also, e.g., Star Indus.*, 412 F.3d at 385.

The difficulty of assessing a trademark owner's rights against a particular defendant (particularly common law rights, as asserted here) coupled with the complexity of the multi-factor test for infringement, as well as fair use and referential use considerations, makes it impossible for third parties like YouTube to prospectively identify infringement.  *See* Burns Decl. ¶¶ 4, 15, 23, 25, 30-31.  That is particularly the case for phrases like "Herbalist & Alchemist," which is made up of standard English words that have been generically used to describe medicinal practices for centuries.  *See, e.g.,* Merriam-Webster Dictionary, "herbalist" (dating to the 16th Century); *id.*, "alchemist" (dating to the 15th Century).  Any automated word search YouTube might undertake based on these words would produce tens of thousands of false negatives—*i.e.* videos with no connection to Plaintiff, Defendants, or the adjudged trademark infringement.  *See, e.g.,*  Burns Decl. ¶ 25 & Ex. G (print out reflecting 29,400 results in response to search of "Herbalist Alchemist" on YouTube).  Because of the limited scope of trademark rights, it would be against YouTube's policies to remove all videos using the words "herbalist" and "alchemist" in close proximity to each other; this would stifle its users' speech. *See* Burns Decl. ¶ 15.  Indeed, it would violate the First Amendment for Plaintiff or the Court to

require YouTube to takedown non-infringing "herbalist" and "alchemist" content.   *See, e.g.*, *GTFM, LLC v. Universal Studios, Inc.*, No. 02-cv-0506, 2006 WL 1377048, at *2 (S.D.N.Y. May 16, 2006) (protecting parody use of trademark as fully protected under the First Amendment).

Trademark law's nuanced application to internet content is why YouTube and other internet services have adopted reactive trademark takedown policies.   *See* Burns Decl. ¶ ¶ 4, 6, 15, 30-31.   The law does not require more.   In *Tiffany Inc. v. eBay Inc.*, the Second Circuit affirmed that eBay could not be held liable for trademark infringement based only on its "general knowledge or reason to know that its service is being used to sell counterfeit goods;" instead, "contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary" to find liability.   600 F.3d 93, 107 (2d Cir. 2010).   Thus, even where Tiffany generally alleged that eBay's online auction website contained listings for counterfeit Tiffany jewelry products, Tiffany was required to provide proof of specific sellers and listings that were infringing before liability could be imposed.   *Id.* at 107-09.

The Default Judgment Injunction's prohibition on publishing "infringing" content falls far short of *eBay*'s requirement of requiring notice of particularized listings in the trademark context, as well as the general requirement that an enforceable order provide "an operative command capable of 'enforcement.'"   *Sanders*, 473 F. 2d at 247 (affirming decision of lower court not to enter requested injunction).   While the Default Judgment's language may have been sufficient to enforce against Defendants (the adjudged direct infringers), the order fails to provide YouTube sufficiently specific notice of what to do because it is not feasible for YouTube to prospectively monitor all of the user-generated content on its site for potential interference with all of the world's trademarks.   *See* Burns Decl. ¶¶ 30-31; *see also id.* ¶¶ 4, 6, 9-17

(describing YouTube's trademark notice-and-takedown system, which is akin to the approved system in *eBay*).

## II.     CONTEMPT SANCTIONS ARE NOT WARRANTED

### A.     Plaintiff Did Not Satisfy The Test For Imposing Contempt Sanctions.

Even if the Default Judgment could be construed as binding YouTube, contempt sanctions are not warranted.  "A court may hold a party in civil contempt only if there is a clear and unambiguous order, noncompliance is proved clearly and convincingly, and the defendant has not been reasonably diligent and energetic in attempting to accomplish what was ordered." *E.g., Drywall Tapers & Pointers v. Local 530*, 889 F.2d 389, 394 (2d Cir. 1989) (internal citation omitted).  Plaintiff cannot establish any of these elements.

#### 1.     The Default Judgment Is Not Clear And Unambiguous Concerning Video Content On YouTube.

Every injunction must "state its terms specifically" and "describe in reasonable detail— and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1).  In other words, "the party enjoined must be able to ascertain from the four corners of the order precisely what acts are forbidden."  *Sanders*, 473 F.2d at 247; *accord Drywall Tapers*, 889 F.2d at 395 (quoting same).

As applied to YouTube, however, the terms of the Default Judgment were anything but "clear and unambiguous."  *Drywall Tapers*, 889 F.2d at 395.  As detailed in Section I.B above, the Default Judgment barred Defendants from infringing on Plaintiff's HERBALIST & ALCHEMIST mark, but it did not *mention* YouTube, nor any specific videos, users, or links. *See* Dkt. 28.  Accordingly, the order did not "describe in reasonable detail" or otherwise "specifically" identify, as Rule 65 requires, action for YouTube to take.  YouTube cannot be held in contempt of such an order.

14

> **2.      *Plaintiff Did Not Prove By Clear And Convincing Evidence That YouTube Did Not Comply With Any Obligation Imposed By The Default Judgment Injunction.***

Plaintiff cannot satisfy its burden of proving by clear and convincing evidence that YouTube did not satisfy an obligation imposed by the Default Judgment. As discussed above in Section I, the Default Judgment does not even apply to YouTube, and it provided YouTube with no specific directive about which content it was supposed to remove. Plaintiff argues that YouTube "should not be permitted to take it upon themselves, however, to determine whether a party's trademark is infringing in the face of a Court Order already ruling that an infringement exists." Pl. Memo. at 10, 16. But YouTube does not question the Court's infringement determination; what it questioned, and what neither the Default Judgment nor Plaintiff's contempt papers make clear, is whether that order applied to the videos in question.

Indeed, on the current record, it is not even clear whether Defendants themselves have violated the order by posting any videos on YouTube. Unless Plaintiff can establish their premise that the Defendants uploaded either of the challenged two videos, neither Defendants nor YouTube can be held in contempt for the two challenged videos posted on YouTube. *E.g. Paramount Pictures Corp. v. Carol Publ'g Grp., Inc.*, 25 F. Supp. 2d 372, 374 (S.D.N.Y. 1998) ("A nonparty in active concert cannot violate an injunction unless the enjoined party is also in contempt.").

In neither Plaintiff's prior communications with YouTube, nor in its instant application to this Court, did Plaintiff identify any record evidence (other than the mere presence of the words "herbalist" and "alchemist") that the users who uploaded the two challenged YouTube videos were connected in any way to Defendants. *See* Burns Decl. ¶¶ 22-25, 27-28. The videos contained no reference to Defendants' known names, usernames, or websites, and appeared to

have originated from outside the United States.  *See id.*  The mere existence of these videos is not "clear and convincing" evidence of *Defendants*' non-compliance.

The Default Judgment adjudicated Plaintiff's trademark rights against Defendants—not against all other users of the generic words "herbalist" and "alchemist."  Such words can legitimately be used by sellers in the United States with senior use rights to Plaintiff, sellers of goods or services that are not sufficiently competitive with Plaintiff to cause confusion, *see*, *e.g.*, *Advance Magazine Publishers, Inc. v. Norris*, 627 F. Supp. 2d 103, 119-21 (S.D.N.Y. 2008), and third parties who wish to refer to Plaintiff's products, including resellers of Plaintiff's products or consumers, *Kelly-Brown v. Winfrey*, 95 F. Supp. 3d 350, 363-65 (S.D.N.Y. 2015) (use of trademark was "fair use" "even if Defendants' use created a likelihood of consumer confusion"), *aff'd on other grounds*, 659 F. App'x 55 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 1098 (2017); *Polymer Technology Corp. v. Mimran*, 975 F.2d 58, 61-62 (2d Cir. 1992) (describing non-infringing uses by resellers).  Accordingly, without clear and convincing evidence connecting Defendants to these videos, YouTube cannot be held in contempt—particularly since YouTube has never been presented with such evidence.  (Plaintiff is, of course, free to apply to the Court to make such determinations and incorporate them into a modified order specifically identifying specific videos, which would resolve this current deficiency.)

### 3.     *Plaintiff Did Not Establish That YouTube Did Not Act With Reasonable Diligence And Energy.*

YouTube has endeavored to respond to Plaintiff's communications, even when those communications lacked the necessary information and were sent to the incorrect YouTube department.  *See* Burns Decl. ¶¶ 18-29, Exs. F, I.  In its most recent communication, YouTube informed the Plaintiff that the Default Judgment was not directed at the videos for which Plaintiff was complaining, but explained that YouTube would be willing to comply with an order

that required the removal of specific videos and to assist with identifying anonymous users pursuant to judicial process. *See* Burns Decl. ¶ 26, Ex. H at 2. Rather than address YouTube's concerns or seek a modified order identifying the videos, Plaintiff instead filed this application, where it once again failed to submit evidence establishing that Defendants uploaded (or caused the uploading of) the challenged videos. Notably, although Plaintiff contends that these videos provided "economic benefit" to YouTube (Pl. Memo. at 16), these videos were never popular (they were collectively viewed 102 times) and resulted in no YouTube revenues. Burns Decl. ¶ 3.

Further, YouTube has in fact removed the two videos, having determined they violated YouTube policies other than its Trademark Policy. *See* Burns Decl. ¶¶ 3, 29. At every step, YouTube has exercised reasonable diligence and energy to investigate Plaintiff's complaints and take appropriate action, consistent with YouTube's policies. *See id.* ¶¶ 18-29. YouTube cannot reasonably do more. *See id.* ¶¶ 4, 30-31.

### B.    Plaintiff Did Not Comply With Local Rule 83.6.

Denial of Plaintiff's motion for contempt is independently warranted because Plaintiff did not comply with S.D.N.Y. Local Rule 83.6 in seeking it. Local Rule 83.6 requires Plaintiff to serve YouTube "personally, together with a copy of this Local Civil Rule 83.6, in the manner provided for by the Federal Rules of Civil Procedure for the service of a summons." But instead of personally serving YouTube's headquarters or registered agent (*see* Fed. R. Civ. P. 4(h)), Plaintiff attempted to serve the Order to Show Cause for Contempt via FedEx. *See* Affidavit of Service, Dkt. 40. The papers it sent did not include a copy of this rule. *See id.* Because service was defective, no contempt order is proper. *See, e.g.*, *Harris ex rel. Beare v. Millington*, No. 2007-cv-3391, 2012 WL 2906017, at *1 (E.D.N.Y. Jul. 16, 2012) (denying motion for contempt sanctions without prejudice because Plaintiff only attempted mail service); *N.Y. City Dist.*

17

*Council of Carpenters Pension Fund v. G & M Drywall Sys. Inc.*, No. 07-cv-1969, 2010 WL 2291490, at *14-15 (S.D.N.Y. Jun. 1, 2010) (vacating prior contempt order because, despite having actual notice, nonparty had not been properly served).

Plaintiff also did not provide a detailed affidavit in support of its contempt motion, as Local Rule 83.6 requires. That rule requires "the affidavit upon which [the] notice of motion or order to show cause is based shall set out with particularity the misconduct complained of." Instead of stating YouTube's misconduct with particularity, the Affidavit of Elizabeth Lambert only avers a single sentence: "Defendants are able to continue promoting its sales through third parties such as…YouTube…which continue to advertise, promote and sell Defendants' products." Dkt. 37, Lambert Aff. ¶ 8. This sentence does not provide YouTube fair notice that any users, channels, videos, or links on YouTube are connected to Defendants' misconduct. Plaintiff's attorney affidavit is likewise of minimal help; it simply re-attaches Plaintiff's prior communications with YouTube, without including YouTube's April 13, 2017 follow-up email explaining why Plaintiff had not provided information YouTube required to remove the videos. *See* Dkt 36, McCabe Aff. ¶ 26, Exs. Q-1, Q-2, and Q-3; *cf.* Burns Decl. Ex. H at 2. Plaintiff's failure to specify in an affidavit what, exactly, YouTube had allegedly done wrong violates Local Rule 83.6. YouTube therefore cannot be held in contempt.

### C.    Plaintiff's Application As To YouTube Is Moot Because All Identified Videos Have Been Removed.

Because all videos that Plaintiff has challenged in its correspondence to YouTube have been removed (*see* Burns Decl. ¶¶ 3, 29), Plaintiff's application for an order "directing ...YouTube ... to immediately takedown any infringing material" is moot. *See* Dkt. 34 at 2 ¶ i. "A request for injunctive relief is moot when the offending conduct ceases and the court finds that there is no reasonable expectation that it will resume." *Beck Chevrolet Co., Inc., v. General*

*Motors LLC*, No. 11-cv-2856, 2011 WL 13156875, at \*3 (S.D.N.Y. Jun. 15, 2011) (internal citations omitted). A party in an intellectual property action permanently removing specific links to allegedly infringing internet content moots the need for injunctive relief. *See, e.g.*, *Fischer v. Forrest*, No. 14-cv-1304, 2017 WL 2992663, at \*16 (S.D.N.Y. Jul. 14, 2017) (request for injunctive relief in trademark dispute mooted by removing the content); *Stokely-Van Camp, Inc. v. Coca-Cola Co.*, 646 F. Supp. 2d 510, 524 (S.D.N.Y. 2009) ("[B]ecause Coca-Cola is no longer running ads that feature the half-bottle of Gatorade, or any other Gatorade trademarks or logos, SVC's request for injunctive relief based on alleged trademark dilution by tarnishment is also moot.").

YouTube should not be subject to any further order "directing … YouTube … to immediately takedown any infringing material." The only videos Plaintiff has identified to YouTube have since been removed; therefore, any further order requiring their "immediate[e] takedown" is unnecessary.

## III.   NO MONETARY SANCTION AGAINST YOUTUBE IS PERMISSIBLE ON THIS RECORD

As discussed above, YouTube should not be held in contempt. In no event, however, would a monetary sanction against YouTube be proper. "When deciding whether to award fees, courts have focused on the willfulness of the contemnor's misconduct." *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996). Here, YouTube committed no willful violation of any kind. *See* Burns Decl. ¶¶ 18-29 (detailing YouTube's investigative and follow-up efforts). YouTube was not bound by the Default Judgment, and the videos Plaintiff identified fell, at best, ambiguously within the scope of the Default Judgment. *See* Sections I, II, *supra*. Further, Plaintiff acknowledges that YouTube responded to Plaintiff's requests (*see* Pl. Memo. at 10), and all identified videos have now been removed. *See* Burns Decl. ¶¶ 3, 29. Under these circumstances,

the Court should deny Plaintiff's request for attorney fees.  *See* Pl. Memo. at 18-20.[1]  YouTube has "advanced a colorable, good-faith basis for believing that it was not covered by the injunction," making a monetary sanction inappropriate.  *See, e.g.*, *Arista Records,* 122 F. Supp. 3d at 39 (not requiring non-party Cloudflare to pay plaintiff's fees).

## CONCLUSION

The Court should find that nonparty YouTube is not bound by the Court's March 8, 2017 Default Judgment.  Accordingly, the Court should conclude that YouTube has shown cause for why no further order or contempt sanctions should be entered against it.

Dated:  August 7, 2017

QUINN EMANUEL URQUHART & SULLIVAN, LLP

/s/ Margret M. Caruso
Margret M. Caruso
555 Twin Dolphin Drive, 5th Floor
Redwood City, CA 94065
Email: margretcaruso@quinnemanuel.com
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Cory D. Struble
51 Madison Avenue, 22nd Floor
New York, New York 10010
Email: corystruble@quinnemanuel.com
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Attorneys for YouTube LLC*

---

[1] Further, Plaintiff submitted no evidence of the amount of monetary sanction it seeks. This Court requires those moving to contempt to "set out with particularity … the claim, if any, for damages" from the contempt including "a reasonable counsel fee."  S.D.N.Y. L.R. 83.6(a). Plaintiff has not detailed either number.  If any fee is to be imposed against it, YouTube is entitled to receive the evidence supporting that fee and have an opportunity to contest it.