**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

HERBALIST & ALCHEMIST, INC.,

                           Plaintiff,

    v.

ALURENT PRODUCTS, INC. and WILL
CLARENT,

                          Defendants.

Case No. 16-cv-9204 (ER)

**NONPARTY FACEBOOK, INC.'S**
**<u>RESPONSE TO ORDER TO SHOW CAUSE</u>**

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT ...............................................................................................................5

     A.     The Court's permanent injunction may not be lawfully enforced against
           Facebook. ........................................................................................................5

     B.     There is no further relief to be awarded because the Facebook page at
           issue is no longer active. ..............................................................................12

     C.     H&A cannot satisfy its burden to prove contempt...................................13

     D.     H&A is not entitled to an award of sanctions or attorney's fees. ..........15

CONCLUSION...........................................................................................................17

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Federal Cases**

*A.V. by Versace, Inc. v. Gianni Versace S.p.A.*
   87 F. Supp. 2d 281 (S.D.N.Y. 2000) ..................................................................14

*Alemite Mfg. Corporation v. Staff*
   42 F.2d 832 (2d Cir. 1930) .................................................................1, 5, 6, 7

*Am. Semiconductor, Inc. v. Cal. Assignments LLC*
   No. 12-CV-06138-LHK, 2013 WL 5937968 (N.D. Cal. Oct. 30, 2013).....................8

*Arista Records, LLC v. Tkach*
   122 F. Supp. 3d 32, 36 (S.D.N.Y. 2015) ..............................................................9

*Blockowicz v. Williams*
   675 F. Supp. 2d 912, *aff'd* 630 F.3d 563 (7th Cir. 2010) .....................................8, 10

*Cardell Fin. Corp. v. Suchodolksi Assocs., Inc.*
   896 F. Supp. 2d 320 (S.D.N.Y. 2012) ...................................................... 10-11, 14

*Cardell Financial Corp. v. Suchodolksi Associates, Inc.*
   No. 09CIV6148VMMHD, 2012 WL 12932049 (S.D.N.Y. July 17, 2012) .......................10, 11

*Eli Lilly & Co. v. Gottstein*
   617 F.3d 186 (2d Cir. 2010) ..............................................................................11

*Heyman v. Kline*
   444 F.2d 65 (2d Cir. 1971) ..................................................................................6

*Lasky v. Quinlan*
   558 F.2d 1133 (2d Cir. 1977) ............................................................................13

*Levin v. Tiber Holding Corp.*
   277 F.3d 243 (2d Cir. 2002) ................................................................................9

*ONE11 Imports Inc. v. NuOp LLC*
   No. 16-CV-7197 (JPO), 2016 WL 7338422 (S.D.N.Y. Dec. 19, 2016).....................7

*Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*
   369 F.3d 645 (2d Cir. 2004) ..............................................................................13

*People of State of N.Y. by Vacco v. Operation Rescue Nat'l*
   80 F.3d 64 (2d Cir. 1996) ....................................................................................6

## <u>TABLE OF AUTHORITIES</u>
### (continued)

**Page(s)**

*Perez v. Danbury Hosp.*
347 F.3d 419 (2d Cir. 2003) ...............................................................................14

*Peterson v. Highland Music*, *Inc.*
140 F.3d 1313 (9th Cir.1998) ...............................................................................6

*Quinter v. Volkswagen of Am.*
676 F.2d 969 (3d Cir. 1982) ...............................................................................6

*Soundkillers LLC v. Young Money Entm't, LLC*
No. 14CV7980 (KBF) (DF), 2016 WL 4990257 (S.D.N.Y. Aug. 2, 2016) ...........................16

*SunEarth, Inc. v. Sun Earth Solar Power Co.*
664 F. App'x 657 (9th Cir. 2016) ...............................................................................8

*Zino Davidoff SA v. CVS Corp.*
No. 06 CIV. 15332RJS, 2008 WL 1775410 (S.D.N.Y. Apr. 17, 2008) ..................................16

**Federal Rules**

Fed. R. Civ. P. 65.........................................................................................1, 5, 6, 7

Fed. R. Civ. P. 70.........................................................................................5

Fed. R. Civ. P. 71.........................................................................................5, 12

Nonparty Facebook, Inc. ("Facebook") respectfully submits this response to the Court's Order to Show Cause, entered on July 20, 2017 (the "OSC").

## PRELIMINARY STATEMENT

Facebook is neither a defendant in this lawsuit, nor is it named in this Court's permanent injunction against Defendants Alurent Products, Inc. and Will Clarent (collectively, "Defendants").  Nevertheless, Plaintiff Herbalist & Alchemist, Inc. ("H&A") has secured an Order to Show Cause ("OSC") why Facebook (among other nonparties) should not be ordered to remove certain third-party authored content from its platform and forced to pay sanctions and attorney's fees for Plaintiff's "takedown efforts to date."  Dkt. 34 at ¶¶ *x* and *xi*.  Serious questions about the scope, application, and propriety of the underlying injunction as it applies to third parties, however, make any order requiring content removal, contempt sanctions, and attorneys' fees inappropriate here.

***First***, under Federal Rule of Civil Procedure 65 and well-established Second Circuit law, a court's power to enjoin is limited to the conduct of the ***parties*** to a lawsuit.  Courts have leeway to apply injunctions to nonparties only in the limited circumstance in which the nonparty has actively abetted or colluded with the enjoined party.  *Alemite Mfg. Corporation v. Staff*, 42 F.2d 832, 832-33 (2d Cir. 1930) (Hand, J.).  Applying the Court's injunction to Facebook—which has no more connection with the enjoined parties than it has with the ***billions*** of other third-party users who post content to its platform—would dramatically expand this narrow exception and swallow the rule whole.

***Second***, in any event, the Facebook Page at issue is no longer active.  Thus, there is nothing for Facebook to do at this point and no purpose is served by ordering Facebook to remove content that is no longer being displayed.  Because the allegedly infringing material identified in Plaintiff's contempt motion is no longer available on Facebook's platform, there is

no further relief for this Court to order, and Second Circuit law counsels against imposition of sanctions or fees.[1]

**Third**, and relatedly, even if the permanent injunction could lawfully be applied to Facebook (and it cannot), Facebook should not be held in contempt due to the default judgment's lack of guidance regarding allegedly infringing content. Because the judgment issued from default proceedings that did not substantively adjudicate the underlying material at issue, the Court's order provides no guidance for third parties like Facebook to evaluate potentially infringing content posted to their platforms, and thus forecloses a finding that Facebook willfully violated a Court order (an essential element of a contempt finding). Moreover, Plaintiff has failed to prove by clear and convincing evidence that Facebook failed to comply with the injunction, or did not make a reasonable attempt to do so. Indeed, the fact that the only Page ever presented to this Court for consideration is no longer available on Facebook compels precisely the opposite conclusion. For these reasons, sanctioning Facebook or awarding attorney's fees would be highly inappropriate under the circumstances.

## FACTUAL BACKGROUND

Plaintiff Herbalist & Alchemist, Inc. ("H&A") filed its Complaint against Defendants Alurent Products and Will Clarent on November 30, 2016. Dkt. 8. The Complaint asserted claims for trademark infringement and other violations of the Lanham Act and New York law

---

[1] On July 31 and August 3, 2017—after the Court had already issued its OSC—Plaintiff Herbalist & Alchemist, Inc. identified additional Facebook posts, Pages, and links that Plaintiff asserts infringes its mark. None of these materials were presented to the Court before it issued its OSC and thus no Court has ever adjudicated whether these materials do or do not contain any infringing content. Facebook has already informed Plaintiff that some of the materials no longer appear on its platform. Other Pages that Plaintiff has requested be removed contain content that does not appear to infringe upon Plaintiff's asserted trademark. The parties will continue to confer about these materials. *See* Declaration of Briggs Matheson in Support of Nonparty Facebook, Inc.'s Response to Order to Show Cause ("Matheson Decl.") at ¶ 6.

based on Alurent Products and Mr. Clarent's unauthorized use of H&A's herbal therapeutics mark. *See generally id*. H&A's Complaint did not assert any claims against Facebook, nor does it contain factual allegations pertaining to any user-generated content on the Facebook platform. In fact, the Complaint included only a single, tangential reference to Facebook that has nothing to do with alleged infringing material appearing on Facebook's platform: H&A stated that it became aware of an advertisement sent by the Defendants "via email" when H&A received a "Message on Facebook from [a] confused consumer." *Id*. at ¶ 25.

On March 8, 2017, the Court entered a default judgment against Alurent Products and Mr. Clarent, holding Defendants liable for each of the claims asserted in H&A's Complaint. Dkt. 28. The default judgment permanently enjoined the Defendants and those in "active concert or participation with Defendants" from, among other things, "providing, producing, distributing, offering for distribution, circulating, . . . promoting, or displaying any services bearing any simulation, reproduction, counterfeit, copy, or colorable imitation of Plaintiffs Mark." *Id*. at 3. The Court's order made no mention of Facebook or any other third-party internet service provider ("ISP"), nor any specific content the Court may have adjudicated to be infringing H&A's trademark.

Two months later, H&A, through its counsel, submitted to the Court a "Letter Motion to Reopen Case and Permission to file Motion for Contempt." Dkt. 32. H&A's Letter Motion asked this Court to direct various "complicit third parties," including Facebook, to "remove Defendants' infringing material from their respective websites." *Id*. at 1-2. H&A further requested that the Court award H&A costs and sanctions for the third parties' "contumacious and unlawful conduct." *Id*. at 2. In support of its request, H&A also submitted a declaration from its counsel detailing H&A's correspondence with Facebook regarding purportedly infringing user-

generated content appearing on the Facebook platform.  Dkt. 36 & Ex. I.  In its interactions with Facebook and to this Court, H&A identified only one Facebook Page for removal: www.facebook.com/herbalalchemists.  *Id*.

On July 20, 2017, the Court issued its OSC directing Facebook and other third parties to show cause why the default judgment and permanent injunction should not be enforced to require them "to immediately takedown any infringing material, including and without limitation the sale and advertisement of infringing products on their websites."  Dkt. 34 at 2.  The OSC also contemplates holding Facebook (and other third parties) in civil contempt, sanctioning it, and awarding H&A attorneys' fees and costs.  *Id*.

On August 1, 2017, counsel for Facebook informed H&A that the Facebook Page at issue was no longer active.  *See* Declaration of Briggs Matheson in Support of Nonparty Facebook's Response, dated August 7, 2017 ("Matheson Decl.") at ¶ 3.  The same day counsel for H&A identified a Facebook Search result that displayed links to two third-party websites that allegedly contained infringing content.  *Id*. at ¶ 4.  On August 3, 2017, Facebook informed counsel that those two links were no longer visible in Search.  *Id*. at ¶ 5.  Counsel for H&A then identified additional material—never identified to Facebook or the Court previously—that it believes are infringing.  *Id.* at ¶ 6.  These materials were not mentioned in the OSC or H&A's Letter Motion seeking a contempt order.  *Id.*  Notwithstanding the fact that some of the Pages identified contain large amounts of content that do not appear to infringe upon Plaintiff's asserted trademark, Plaintiff has requested that entire Pages be removed.  The parties continue to confer about these requests, which concern material that is outside the scope of H&A's Letter Motion, and that therefore has no bearing on the OSC or these proceedings.  *Id*.

4

**ARGUMENT**

A.     **The Court's permanent injunction may not be lawfully enforced against Facebook.**

Plaintiff H&A's request to enforce the Court's permanent injunction against Facebook fails as a matter of law.  Although the OSC asks "why an order should not be issued under Rules 70 and 71 of the Federal Rules of Civil Procedure," neither of those rules governs the substantive question presented—*i.e.*, whether this Court's permanent injunction may be lawfully enforced against Facebook in the first place.  Rule 70, which largely addresses judgments conveying title to property, merely provides that "[i]f a judgment requires a party to . . . perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done—at the disobedient party's expense—by another person appointed by the court."  Fed. R. Civ. P. 70(a).  For its part, Rule 71, states that "*[w]hen* an order . . . may be enforced against a nonparty, the *procedure* for enforcing the order is the same as for a party."  Fed. R. Civ. P. 71 (emphasis added).  Rule 71 does not resolve the antecedent question whether an order granting an injunction may, in fact, be enforced against a nonparty.

Courts look elsewhere to answer that question:  Rule 65.  That rule provides that "[e]very order granting an injunction and every restraining order must . . . state its terms specifically" and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."  Fed. R. Civ. P. 65(d)(1).  Thus, "the party enjoined must be able to ascertain from the four corners of the order precisely what acts are forbidden."  *Sanders v. Air Line Pilots Ass'n, Int'l*, 473 F.2d 244, 247 (2d Cir. 1972).

In addition, Rule 65 codifies the "well-established principle that, in exercising its equitable powers, a court 'cannot lawfully enjoin the world at large.'"  *N.Y. v. Operation Rescue Nat'l*, 80 F.3d 64, 70 (2d Cir. 1996) (quoting *Alemite*, 42 F.2d at 832); *see also Hansberry v. Lee*,

311 U.S. 32, 40 (1940) (noting the basic rule of due process that "one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process"). Thus, under Rule 65 an injunction binds only (i) the parties to a lawsuit, (ii) the parties' officers, agents, servants, employees, and attorneys, and (iii) "persons who are in active concert or participation" with any of those persons or entities. Fed. R. Civ. P. 65(d)(2). Rule 65 does ***not*** "grant a court power so broad as to make punishable the conduct of persons who act independently and whose rights have not been adjudged according to law." *Heyman v. Kline*, 444 F.2d 65, 65-66 (2d Cir. 1971) (citation omitted).

To the contrary, the circumstances in which a court may enforce an injunction against a nonparty—including via contempt proceedings—are exceedingly narrow: "In order for a court to hold a nonparty respondent in contempt of a court order, 'the respondent must either abet the [party named in the order], or must be legally identified with him.'" *People of State of N.Y. by Vacco v. Operation Rescue Nat'l*, 80 F.3d 64, 70 (2d Cir. 1996) (quoting *Alemite*, 42 F.2d at 832); *see also, e.g.*; *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1323 (9th Cir.1998) (same); *Quinter v. Volkswagen of Am.*, 676 F.2d 969, 972 (3d Cir. 1982) (same).

The U.S. Supreme Court explained in *Regal Knitwear Co. v. N.L.R.B.* the narrow purpose of this exception—that successors and assigns may be bound by an injunction if they are "instrumentalities through which defendant seeks to evade an order or may come within the description of persons in active concert or participation with them in the violation of an injunction." 324 U.S. 9, 14 (1945). Although the Supreme Court did not decide if the nonparties there could be held liable for violating the injunction, it cautioned that it "depends on an appraisal of [the nonparty's] relations and behavior and not upon the mere construction of terms of the order." *Id.* at 15. Thus, as Judge Oetken more recently explained:

A court's power to enjoin is limited to the conduct of a party; therefore, the scope of an injunction is defined by ***the relationship between the party enjoined and the nonparty in question.*** "[T]he ***only*** occasion when a person not a party may be punished is when he has helped to bring about, not merely what the decree has forbidden, . . . but what it has the power to forbid, an act of a ***party***."

*ONE11 Imports Inc. v. NuOp LLC*, No. 16-CV-7197 (JPO), 2016 WL 7338422, at *2 (S.D.N.Y.

Dec. 19, 2016) (quoting *Alemite*, 42 F.2d at 833) (emphasis added).

Courts—including this one—routinely decline to enforce injunctions against nonparties

that have only passive or remote connections to the enjoined parties.  For example, in *GMA*

*Accessories, Inc. v. Eminent, Inc.*, plaintiff GMA, the holder of a trademark for certain clothing

and related merchandise, sued various defendants for trademark infringement.  2008 WL

2355826, at *1 (S.D.N.Y. May 29, 2008).  GMA settled with one defendant, (BOP LLC) by

entering into a consent injunction prohibiting BOP from selling or offering for sale any

merchandise that used GMA's mark.  *Id.*  Shortly after the court entered judgment incorporating

the injunction, a dispute arose between GMA and BOP as to whether the injunction covered

certain merchandise.  *Id.*  GMA moved *ex parte* for an order directing BOP and its nonparty

supplier (Sanei) to show cause why they should not be held in contempt of the injunction.  *Id.* at

*2.

The district court declined to enforce the consent injunction against nonparty Sanei,

finding that Sanei had not "acted in concert or participation" with BOP.  *Id.* at *11-14.  In

reaching this conclusion, the district court emphasized that "active participation" requires more

than a mere supplier-seller relationship.  The narrow exception provided in Rule 65 applies only

"***where the non-party is controlled and used by the enjoined party*** as a device to circumvent the

Court's orders"; where "an enjoined party engages in subterfuge . . . ***through the instrumentality***

***of a shell company, an agent, or a successor in interest***"; or "where an enjoined party is

*substantially intertwined* with a nonparty." *Id.* at \*12-13 (emphasis added).  In *GMA*, however,

the plaintiff merely showed that nonparty Sanei "filled BOP's purchase orders" for the infringing

goods, "which BOP then offered for sale on its website." *Id.* at \*13.

Similarly, in *Blockowicz v. Williams*, 675 F. Supp. 2d 912, *aff'd* 630 F.3d 563 (7th Cir.

2010), the court refused to enforce an injunction as to a non-party website hosting defamatory

content, because the website operator's "only act, entering into a contract with the defendants,

occurred long before the injunction was issued.  Since the injunction was issued, [the website

operator] has simply done nothing, and it certainly has not actively assisted the defendants in

violating the injunction." *Blockowicz*, 630 F.3d at 569; *see also, e.g.*, *SunEarth, Inc. v. Sun*

*Earth Solar Power Co*., 664 F. App'x 657, 659 (9th Cir. 2016) (affirming district court's refusal

to order contempt sanctions against nonparty "for infringing content on its independent

distributors' websites," because plaintiff did not show that nonparties "engaged in the type of

knowing, affirmative conduct necessary for it to have aided or abetted its distributors'

violations"); *Am. Semiconductor, Inc. v. Cal. Assignments LLC*, No. 12-CV-06138-LHK, 2013

WL 5937968, at \*1 (N.D. Cal. Oct. 30, 2013) (refusing to enforce injunction against nonparties

because plaintiff failed to prove that the nonparties either aided or abetted defendants or are

legally identified with defendants).

The same logic in *GMA* and *Blockowicz* applies to Facebook here.  H&A does not (and

cannot) allege that Facebook is "legally identified" with either of the Defendants.  Nor has H&A

shown that Facebook is controlled by or intertwined with Alurent Products or Mr. Clarent.

Simply put, H&A has not shown that Facebook engaged in any conduct here, much less the type

of conduct that courts—including this Court—consistently require to justify applying an

injunction to a nonparty allegedly colluding with an enjoined party.  Instead, H&A asserts in a

conclusory manner in its Letter Motion that Facebook is a "complicit third part[y]" to Defendants' continued infringement of H&A's Mark.  Dkt. 32 at 1.  According to H&A, Facebook is therefore in "flagrant disregard" of the Court's order.  *Id.* at 2.  Such allegations do not come close to satisfying H&A's burden to prove by clear and convincing evidence that Facebook acted at the behest and for the benefit of Defendants.  *See Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002) ("[T]he party seeking to hold another in civil contempt bears the burden of proof to establish the offense by clear and convincing evidence.")  (alteration in original) (quotation marks omitted).  Indeed, the ***only*** alleged connection between Defendants and Facebook is that Defendants—like ***billions*** of other Facebook users—posted content to Facebook's platform.

The cases cited in Plaintiff's Memorandum of Law in support of its contempt request do not counsel a different result.  Indeed, as Plaintiff notes, to prove aiding and abetting of an enjoined party, the party seeking to enforce an injunction against a nonparty must show "'that the challenged action was taken for the benefit of, or to assist, a party subject to the decree.'"  Dkt. 35 at 12 (quoting *Arista Records, LLC v. Tkach*, 122 F. Supp. 3d 32, 36 (S.D.N.Y. 2015)).  Yet the case on which Plaintiff relies is inapposite.  In *Arista Records*, the court's Temporary Restraining Order ("TRO") specifically barred the third party provision of domain name services to any "grooveshark" domain.  *Arista Records*, 122 F. Supp. 3d at 33.  The district court found nonparty CloudFlare, "an internet service provider that provides authoritative domain name system servers," to be in "active concert or participation" with the enjoined defendants after it allowed multiple "grooveshark" domains to use CloudFlare's services.  *Id.* at 34-35.

But even assuming *Arista Records* was correctly decided, the district court's decision in that case rested on the various "services" provided by CloudFlare "that it describes as improving

9

the performance of [Defendant's infringing "Grooveshark" website]." *Id*. And, in holding

CloudFlare subject to the district court's TRO, the court specifically distinguished *Blockowicz*:

> The *Blockowicz* court also highlighted the fact that the third-party service
> provider ***merely continued to host the defamatory content on its website as it
> had done prior to the issuance of the injunction***. In contrast, CloudFlare's
> authoritative domain name server connects users to the new Grooveshark site by
> translating a user's browser entry into the IP address for the site, and it also
> ensures faster load times and optimal performance for the site, both of which are
> far from the passive hosting of content at issue in *Blockowicz*.

*Id.* at 37 (emphasis added). The court further noted that CloudFlare had specifically

"acknowledge[d] that it permitted an anonymous user to register a 'grooveshark' domain name

to use its services ***after it had received notice of the TRO***." *Id.* (emphasis added). Furthermore,

the court emphasized that the TRO was "narrow in scope" because it specifically targeted

"grooveshark" domain names, and that therefore CloudFlare was "directly engaged in facilitating

access to Defendants' sites with knowledge of the specific infringing names of those sites." *Id.*

at 38.

By contrast, here, the Court's default judgment does not provide a comparable level of

specificity regarding infringing content for Facebook to remove. Plaintiff has provided no

evidence whatsoever to suggest that Facebook has done anything other than passively host

certain user-generated content, as it did prior to the issuance of this Court's default judgment.

Moreover, as noted, the allegedly infringing content identified in H&A's Letter Motion is no

longer available on Facebook. In short, Facebook's conduct is squarely in line with the type of

action endorsed in *Blockowicz*, and bears no resemblance to the assistance CloudFlare provided

the defendants in *Arista Records* after the issuance of the TRO in that case.

Plaintiff's reliance on *Cardell Financial Corp. v. Suchodolksi Associates, Inc*., No.

09CIV6148VMMHD, 2012 WL 12932049, at \*41 (S.D.N.Y. July 17, 2012), report and

recommendation adopted sub nom. *Cardell Fin. Corp. v. Suchodolksi Assocs., Inc*., 896 F. Supp.

2d 320 (S.D.N.Y. 2012), is also misplaced.  *See* Dkt. 35 at 18.  The district court in that case held

a third party subject to an anti-suit injunction based on his "representative and authoritative

capacity."  *Cardell Fin. Corp.*, 2012 WL 12932049 at *41.  In fact, the third party had testified

that he was the president and a member of the board of directors for one of the enjoined parties.

*Id.*  Similarly, in *Eli Lilly & Co. v. Gottstein*, 617 F.3d 186, 195 (2d Cir. 2010), the court held

that a nonparty attorney was subject to a protective order based on "unequivocal" evidence that

the nonparty had "schemed with [a party to the protective order] to bypass the protective order"

and release confidential information by issuing "sham" subpoenas for the information.

Plaintiff does not (and indeed, cannot) allege any sort of "representative" relationship or

conspiratorial scheme between Facebook and Defendants like the conduct at issue in *Cardell*

*Financial* and *Eli Lilly & Co.*  Moreover, enforcing the Court's injunction against Facebook

would dramatically expand the limited exception for aiders and abettors well beyond its intended

scope.  Doing so would expose ISPs like Facebook and many other online publishers to limitless

contempt liability every time one of their ***users*** engages in conduct that potentially violates an

injunction, even though the ISPs have no other connection with their users—much less

connections that justify being treated as colluders.  Indeed, applying the Court's injunction to

Facebook would create a road map for all aggrieved plaintiffs in H&A's shoes:  sue an individual

content-creator, perhaps in a manner that maximizes the chance that he or she will be unable or

unwilling to defend the lawsuit regardless of its underlying merit, and then after a default

judgment, present the injunction to every conceivable ISP as an unassailable *fait accompli*.

Moreover, exposing ISPs to this type of contempt liability would force them to remove

content regardless of whether the injunction sought to be applied is a product of contested

adjudication on the merits, the parties' consent, or, as here, default proceedings.  A newspaper

that publishes a letter to the editor, a bookstore that continues to sell a book found to be

misleading, and a library that provides Internet access are all third parties with whom an enjoined

party may passively act.  But none has the type of close relationship with the enjoined party that

courts have required to hold them bound by an injunction to which they were not a party.

Enforcing the Court's injunction against Facebook and applying the narrow exception for aiders

and abettors under these circumstances would swallow the rule whole, and violate the attendant

"due process concerns raised when courts seek to bind a non-party."  *Inst. of Cetacean Research*

*v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 953 (9th Cir. 2014).  That is especially true

given that Facebook has not had an opportunity to be heard on the underlying issue whether the

Defendants' posted content does, in fact, infringe a valid trademark belonging to H&A.  *See*

*generally, e.g.*, *Marcus v. Search Warrants of Prop. at 104 E. Tenth St., Kansas City, Mo*., 367

U.S. 717, 731-32 (1961) (requiring opportunity to be heard prior to seizure of material from

news distributors).

**B.      There is no further relief to be awarded because the Facebook Page at issue
is no longer active.**

Even if the Court's injunction could be lawfully applied to Facebook (and, for the reasons

discussed above, it cannot), it should not be enforced because the purportedly offending content

is no longer available on Facebook's platform.  As detailed in the accompanying declaration of

Briggs Matheson, Facebook confirms that the material identified in H&A's takedown request

letters of March 7 and March 15, 2017, and cited as the basis of Plaintiff's complaint against

Facebook in its Letter Motion to the Court, no longer appears on Facebook.  *See* Matheson Decl.

at ¶ 3.

The Second Circuit has specifically explained in the context of civil contempt

proceedings brought under Federal Rule of Civil Procedure 71 "that a civil contempt proceeding

is wholly remedial, to serve only the purposes of the complaint, not to deter offenses against the public or to vindicate the authority of the court." *Lasky v. Quinlan*, 558 F.2d 1133, 1137 (2d Cir. 1977). Thus, where a civil contempt proceeding would serve no purpose and have no effect on the parties because the challenged noncompliance has already been remedied, the contempt request must be dismissed. *Id.* That is precisely the situation here. The purportedly infringing material identified by Plaintiff in its Letter Motion is no longer available on Facebook's platform. *See* Matheson Decl. at ¶ 3.

As noted in the accompanying Matheson Declaration, *after* the Court issued the OSC, Plaintiff identified additional material on Facebook that it asserts is infringing. None of these newly identified items is identified in either Plaintiff's Letter Motion seeking a contempt order or the Court's default judgment. Matheson Decl. ¶ 6. This Court has never adjudicated whether these new materials infringe Plaintiff's mark. As a result, the newly identified content appears irrelevant to the OSC. In any event, some of these links are no longer available and others are for entire Facebook Pages that include content that does not appear to infringe upon Plaintiff's asserted trademark. The parties continue to confer about these latest requests.

### C.     H&A cannot satisfy its burden to prove contempt.

Even assuming the Court's injunction could reach nonparty Facebook (and, again, it cannot), it would be highly inappropriate to hold Facebook in civil contempt. "A party may be held in civil contempt for failure to comply with a court order if (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc*., 369 F.3d 645, 655 (2d Cir. 2004). None of these elements is satisfied here.

13

*First*, the order H&A seeks to enforce against Facebook—the Court's March 8, 2017 default judgment and injunction—is vague and ambiguous when applied to third party ISPs like Facebook.  *See Perez v. Danbury Hosp.*, 347 F.3d 419, 424 (2d Cir. 2003) (noting that the question of whether an order is "clear and unambiguous" for purposes of a contempt motion cannot be answered "in a vacuum," but rather must be answered "with reference to the conduct in question").  "In evaluating a motion for contempt, the Court must construe the breadth of injunctive relief in the manner most favorable to the alleged contemnor."  *Cardell Fin. Corp.*, 896 F. Supp. 2d at 327 n.5; *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F. Supp. 2d 281, 291 (S.D.N.Y. 2000) ("'[T]he longstanding, salutary rule in contempt cases is that ambiguities and omissions in orders redound to the benefit of the person charged with contempt.'")  (quoting *Drywall Tapers and Pointers of Greater N.Y., Local 1974 of I.B.P.A.T. AFL–CIO v. Local 530 of Operative Plasterers and Cement Masons Intern. Ass'n*, 889 F.2d 389, 400 (2d Cir. 1989) (Mahoney, J., concurring in part and dissenting in part)).

This Court's default judgment permanently enjoins the Defendants and their agents from, among other things, "imitating, copying, or making any other infringing use or providing services bearing Plaintiff's mark, HERBALIST & ALCHEMIST (the 'Mark')."  Dkt. 28 at 3.  But because the permanent injunction issued from default proceedings, the default judgment contains no description or analysis of the "Mark," or the scope of material covered by the injunction.  For example, in its correspondence with Facebook, H&A demanded that Facebook remove posts using the name "herbalalchemist."  Dkt. 36-9 (McCabe Decl. Exh. I).  It is not clear from the order sought to be enforced against Facebook—and no court has ever adjudicated on the merits—whether the challenged content infringes a valid trademark held by H&A.  Indeed, according to the complaint, Plaintiff has no registered mark—only a "pending

application" for a mark.  Dkt. 8 at ¶ 3.  Nor is it clear whether other uses of the words "herbal" or

"alchemist" that appear in user-generated content posted to Facebook falls within the scope of

the permanent injunction.  In other words, it is impossible for Facebook to "ascertain from the

four corners of the order precisely what acts are forbidden."  *Sanders*, 473 F.2d at 247.

> *Second*, H&A has not presented any—let alone clear and convincing—proof of

noncompliance by Facebook.  As noted above, in order for the Court to hold Facebook in

contempt of violating the permanent injunction, H&A must prove by clear and convincing

evidence that Facebook actively participated in the Defendants' alleged violations.  But H&A

has provided no evidence of any connection among Facebook and any of the Defendants that

goes beyond the standard relationships that Facebook has with its billions of users across the

globe.  In addition, H&A's purported "evidence" of Facebook's noncompliance—i.e., its

responses to H&A's takedown requests—are not clear and convincing evidence of

noncompliance with the permanent injunction, because the Court's default judgment does not

clearly and unambiguously identify the scope of the injunctive relief granted.  *See* Dkt. 36-9 &

36-14 (McCabe Decl. Exs. I, N).

> *Finally*, notwithstanding the deficient nature of H&A's request and the ambiguity of the

Court's default judgment, nonparty Facebook is not in violation of the Court's default judgment.

As explained above, Facebook has confirmed that the Facebook Page at issue is not active.  It

would be particularly inappropriate to hold Facebook in contempt after the identified content in

question is no longer available.

### D.    H&A is not entitled to an award of sanctions or attorney's fees.

As noted, the Court's OSC contemplates sanctioning Facebook for its failure to comply

with the permanent injunction.  Dkt. 34 at 3.  For all of the reasons discussed above, it would be

highly inappropriate to impose monetary sanctions on Facebook.  As this Court has consistently recognized, "[a]lthough federal courts have broad discretion to determine an appropriate contempt sanction, a court is obliged to use the least possible power adequate to bring about compliance."  *Soundkillers LLC v. Young Money Entm't, LLC*, No. 14CV7980 (KBF) (DF), 2016 WL 4990257, at *4 (S.D.N.Y. Aug. 2, 2016), *report and recommendation adopted*, No. 14-CV-7980 (KBF), 2016 WL 4926198 (S.D.N.Y. Sept. 15, 2016) (quotation omitted)).  Sanctions would be particularly inappropriate against Facebook, when the identified content at issue is no longer available on its platform.

Attorney's fees are also highly inappropriate under the circumstances.  "[C]ourts in this Circuit generally award the reasonable costs of prosecuting the contempt, including attorney's fees, ***only*** where violation of a court order is found to have been willful."  *Zino Davidoff SA v. CVS Corp.*, No. 06 CIV. 15332RJS, 2008 WL 1775410, at *7 (S.D.N.Y. Apr. 17, 2008).  Here, H&A has failed to explain or support with evidence its bald claim that Facebook acted "[i]n flagrant disregard of the Court's Order," which, again, did not name Facebook or identify any content on its platform.  Dkt. 32 at 2.  Facebook has advanced good-faith bases for believing that the court cannot enjoin it following default proceedings based solely on its role as an online publisher of allegedly infringing user-generated content.  H&A should not be compensated for its efforts to dramatically expand the scope of the permanent injunction without regard to the rights of third parties that have no relationship whatsoever with the Defendants.

## CONCLUSION

For the reasons discussed above, Facebook respectfully requests that the court deny

H&A's request to impose the Court's default judgment and permanent injunction on Facebook.

Facebook further requests that the Court deny H&A's request for sanctions and attorney's fees.

Respectfully submitted,

WILMER CUTLER PICKERING
HALE AND DORR LLP

Dated:  August 7, 2017

By:     */s/ Ross E. Firsenbaum*
        Ross E. Firsenbaum
        Omar Khan
        Seven World Trade Center
        250 Greenwich Street
        New York, NY 10007
        Telephone:  212-230-8800
        Facsimile:  212-230-8888

        -    and    -

        Paven Malhotra (*pro hac vice*
        forthcoming)
        Briggs Matheson (*pro hac vice*
        forthcoming)
        KEKER, VAN NEST & PETERS LLP
        633 Battery Street
        San Francisco, CA 94111-1809
        Telephone:  415-391-5400
        Facsimile:  *415-397-7188*

        *Attorneys for Nonparty FACEBOOK, INC.*