UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HERBALIST & ALCHEMIST, INC.,

      Plaintiff,

 - against -

ALURENT PRODUCTS, INC. and WILL
CLARENT a/k/a WILL CLAREN,

      Defendants.

**ORDER**

16 Civ. 9204 (ER)

Ramos, D.J.:

  On November 30, 2016, Herbalist & Alchemist Inc. ("Plaintiff") brought this action against Alurent Products, Inc. and Will Clarent a/k/a/ Will Claren ("Claren," together, "Defendants"), asserting the following causes of actions: trademark infringement under 15 U.S.C. § 1125(a), false designation of origin under 15 U.S.C. § 1125(a), false advertising under 15 U.S.C. § 1125(a)(1)(B), unfair competition under 15 U.S.C. § 1125(a)(1)(A), cyberpiracy under 15 U.S.C. § 1125(d)(1)(A), New York common law unfair competition, violation of Sections 349(a), 349(h), 350 and 350-a of the New York General Business Law, and violation of Section 360-1 of the New York General Business Law. Doc. 8.

  Before the Court is Plaintiff's motion for attorneys'' fees and costs, and compensatory sanctions. Doc. 100. For the reasons set forth below, Plaintiff's motion is GRANTED in part and DENIED in part.

**I. BACKGROUND**

  On March 8, 2017, the Court granted Plaintiff's application for default judgment and permanent injunction against the Defendants. Doc. 28. On September 18, 2017, the Court further issued an order which stated, *inter alia*, that Defendants must "immediately take down any infringing Herbal Alchemist material, including without limitation, the sale and

advertisement of infringing Herbal Alchemist products on their websites www.nfinx.com/shop, www.natural-alchemist.com and on any other website owned or controlled by either Defendant," and "any infringing material that references the Herbal Alchemist name and all variations thereof." Doc. 89 ¶¶ 1, 4. The Court also noted that if Defendants were found in contempt they would be sanctioned with, "including and without limitation, an award of reasonable attorneys' fees and costs in connection with [the default judgment and permanent injunction application] and Plaintiff's takedown efforts to date." *Id.* ¶ 12.

By letter dated October 26, 2017, Plaintiff asserted that Claren failed to comply with the September 18, 2017 order, and asked the Court to find Claren in criminal contempt, to issue an order of arrest for Claren and to refer the matter to the United States Attorneys' Office for prosecution. Doc. 96 at 1–2. By order dated November 10, 2017, the Court instructed Plaintiff to provide, *inter alia*, further details of Claren's alleged infringements. Doc. 97. On December 22, 2017, Plaintiff provided information showing that Claren engaged in the following misconduct since September 18, 2017: (1) changed the name of his website in order to continue the infringing activities; (2) changed the host for his website as the prior host had taken it down; (3) posted his infringing products on various third party websites; (4) continued to communicate with customers and prospective customers on the telephone in order to promote and sell his infringing products; and (5) failed to take down infringing material on his Twitter page. Doc. 98 at 2–6. Claren has not appeared in this action to date.

On January 9, 2018, the Court issued an order declining to find Claren in criminal contempt. Doc. 99. However, reasoning that Claren had "not diligently attempted to comply with the Court's clear orders to refrain from infringing activities," the Court held Claren in civil contempt and awarded Plaintiff reasonable attorneys' fees and costs that it incurred as a result of Claren's non-compliance. Doc. 99 at 3. Plaintiff now moves the Court for an order of attorneys'

fees and costs, and compensatory sanctions in an amount of $169,990.28, which it allegedly incurred due to Claren's noncompliance with the Court's order. Doc. 100.

## II. LEGAL STANDARD

"[T]he decision to award fees rests in the court's equitable discretion." *Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 147 (2d Cir. 2001); *see Weitzman v. Stein*, 98 F.3d 717, 720 (2d Cir. 1996) ("trial courts enjoy considerable discretion in determining the appropriate amount of attorney fees") (citation omitted); *Casale v. Kelly*, 710 F. Supp. 2d 347, 367 (S.D.N.Y. 2010) ("A court may award appropriate attorney fees and costs to a victim of contempt.") (quotation marks omitted). "If a court finds that the fee applicant's claim is excessive, or that time spent was wasteful or duplicative, it may decrease or disallow certain hours or, where the application for fees is voluminous, order an across-the-board percentage reduction in compensable hours." *Malletier v. Artex Creative Int'l Corp.*, 687 F. Supp. 2d 347, 362–63 (S.D.N.Y. 2010)) (quoting *Santa Fe Natural Tobacco Co. v. Spitzer*, 00 Civ. 7274 (LAP), 00 Civ. 7750 (LAP), 2002 WL 498631 at *3 (S.D.N.Y. Mar. 29, 2002)).

"A sanction imposed on a party held in civil contempt generally may serve either or both of two purposes: to coerce the contemnor into complying in the future with the court's order, or to compensate the complainant for losses resulting from the contemnor's past noncompliance." *Am. Honda Motor Co. v. V.M. Paolozzi Imports, Inc.*, No. 7:10-CV-955 (FJS) (ATB), 2013 WL 1296421, at *6 (N.D.N.Y. Mar. 26, 2013) (alteration omitted) (quoting *Perfect Fit Indus., Inc. v. Acme Quilting Co., Inc.*, 673 F.2d 53, 56 (2d Cir. 1982)); *Clissuras v. City Univ. of New York*, No. 02 CIV. 8130 (SAS), 2005 WL 3288097, at *2 (S.D.N.Y. Dec. 2, 2005). "Where the purpose of the sanction is compensatory, the amount of the award should reimburse the injured parties for their actual damages." *Clissuras*, 2005 WL 3288097, at *2 (citing *Perfect Fit Indus., Inc.*, 673 F.2d at 57).

Here, the Court has already determined that Plaintiff is entitled to an award of reasonable attorneys' fees and costs. Doc. 99 at 3. The only questions are whether the fees and costs requested by Plaintiff are reasonable and whether additional compensatory sanctions are warranted.

## III. DISCUSSION

### A. Attorneys' Fees and Costs

Plaintiff seeks attorneys' fees and costs in the amount of $147,715.28 for the period from February 28, 2017 to February 22, 2018. McCabe Decl., Doc. 103, ¶ 10. Of that, $138,556.00 are for attorneys' fees and $9,159.28 are for costs. *Id.* During that period of time, Plaintiff relied on the services of Phillips Nizer LLP, a full-service, international law firm with a dedicated intellectual property practice group. A team comprised principally of one partner, one counsel, two associates and one legal assistant worked on this matter. *Id.* ¶¶ 2–6. Counsel's billing records indicate that they expended significant time and resources to secure the Court's Order of default judgment and permanent injunction and ensure compliance with it. For example, in March 2017 counsel successfully argued the default judgment and permanent injunction motion. *Id.* Ex. 1 at 2 (showing hours logged to prepare and attend hearing). Between March and May of 2017, counsel drafted, revised, and issued numerous takedown and restraining notices to various third parties and continued to monitor Defendants' ongoing infringement. *Id.* Ex. 1 at 2–13. In August 2017, counsel prepared and served on Defendants and multiple third parties an order to show cause why Defendants should not be held in contempt for their continued violation of the Court's March 2017 permanent injunction. *Id.* Ex. 1 at 20–33; *see* Doc. 34. Counsel has secured the takedown or deactivation of internet accounts containing content and web-links in violation of the Court's order. *See, e.g.,* Docs. 54, 56, 95. The Court is therefore persuaded that counsel has performed tasks reasonable and necessary to the enforcement of this Court's prior order.

Likewise, the Court finds counsel's fees to be reasonable in light of their experience and billing rates. Monica McCabe, the lead partner on this matter, has over 25 years of intellectual property experience, is a member of the International Trademark Association, a mediator for the Southern District's Mediation Program, and has brought those experiences to bear on this matter. *See* McCabe Decl., ¶ 2. The Court finds that McCabe's effective billing rate of $445 per hour is within the range of reasonable attorney rates for similarly qualified attorneys. *Id.* Ex. 1 at 5; Doc. 106, Ex. A (chart summarizing effective rate billed); *see Ritchie v. Gano*, 756 F. Supp. 2d 581, 583 (S.D.N.Y. 2010) (rates of "$475 to $525 per hour for two partners with over twenty years of experience . . . are reasonable in light of the rates normally charged for [copyright and trademark infringement] work in this district"); *Malletier*, 687 F. Supp. 2d at 360–61 (finding rates "between $475 and $540" reasonable for a partner with 24 years of experience in "intellectual property law at a large Manhattan law firm") (citing *Entral Group Int'l, LLC v. Sun Sports Bar Inc.*, 05–CV–4836 (CBA), 2007 WL 2891419 at *10 (E.D.N.Y. Sept. 28, 2007) (awarding attorneys' fees of $560.00 in copyright infringement case); *Nat'l Ass'n for the Specialty Food Trade, Inc. v. Construct Data Verlag AG*, 04 Civ. 2983(DLC) (KNF), 2006 WL 5804603 at *6 (S.D.N.Y. Dec. 11, 2006) (awarding attorneys' fees of $400–$540 per hour for partners)).

Kathryn Lundy, a counsel at Phillips Nizer LLP with eleven years of practice charged an hourly effective billing rate of $149. *See* McCabe Decl., ¶ 4; Doc. 106, Ex. A. The Court finds this rate reasonable because it is well below the range of rates that courts in this district have found reasonable for comparably senior attorneys. *Cf. Malletier*, 687 F. Supp. 2d at 361 ("The hourly rates of $390.00 to $470.00 charged by the associates and junior partner representing Vuitton fall at the very top of the spectrum of reasonable hourly rates for associates."); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 506–7 (S.D.N.Y. 2009) (finding reasonable

junior partners rate of $425). Likewise, the Court finds the hourly rates billed for the two associates who worked on this matter to be reasonable. Rachel Bandli, a midlevel associate, billed at an effective rate of $325 per hour, while junior associate Janeen Hall billed at an effective rate of $182 per hour. McCabe Decl., ¶¶ 3, 5; Doc. 106, Ex. A. Those rates are well within the rates that have been approved for law firm associates in this District. *See Genger v. Genger*, No. 14 Civ. 5683 (KBF), 2015 WL 1011718, at *2 (S.D.N.Y. Mar. 9, 2015) ("New York district courts have . . . recently approved rates for law firm associates in the range of $200 to $450 per hour.").

The Court also finds that Legal assistant Kristine Grissett's effective billable rate of $186 per hour is reasonable given her several decades of experience. McCabe Decl., ¶ 6; Doc. 106, Ex. A; *see Nat'l Ass'n for Specialty Food Trade, Inc. v. Construct Data Verlag AG*, No. 04 CIV. 2983 (DLC) (KNF), 2006 WL 5804603, at *6 (S.D.N.Y. Dec. 11, 2006), (finding that "$200 is a reasonable hourly rate for the work performed by a senior paralegal" ), *report and recommendation adopted sub nom. Nat'l Ass'n for the Specialty Food Trade, Inc. v. Construct Data Verlag AG*, No. 04 CIV. 2983 (DLC), 2007 WL 656274 (S.D.N.Y. Feb. 23, 2007).

Finally, the Court finds that the number of hours expended on this matter are neither excessive nor wasteful and therefore do not require any reduction. *See Malletier*, 687 F. Supp. 2d at 362–63; *Santa Fe Natural Tobacco Co.*, 2002 WL 498631 at *3. Indeed, as counsel notes, Plaintiff's billing records demonstrate that duplicative entries were not charged to the client and are not part of the fee application. McCabe Decl., ¶ 8; *id.* Ex. 1 (showing numerous entries as a "NO CHARGE").

### B. Additional Compensatory Sanctions

In addition to an award of attorneys' fees and costs, Plaintiff also seek an award of compensatory sanctions to compensate Plaintiff's CEO, Elizabeth Lambert, for time she spent

"working toward the removal of infringing materials from various websites." Lambert Decl., Doc. 102, ¶ 5. Specifically, Lambert avers that, from August 2016 through early January 2018, she spent over 80 hours researching and contacting web hosts and website owners to ensure that Defendants' infringing materials were taken down from third-party websites. *Id.* ¶ 4. Lambert asserts that based on, *inter alia*, her status as a Harvard Business School educated CEO, she is entitled to be compensated for those hours at a rate of $275 per hour for a total of $22,275. The Court concludes, in its discretion, that Plaintiff has not demonstrated its entitlement to such compensatory sanctions.

For starters, the Court notes that a not insignificant number of the tasks identified by Lambert consist of "copying internet pages and formatting [them] for insert" into a letter, "upload[ing] [a] letter" to a website, or similarly mundane tasks, *see id.*, Ex. B, that could have been completed by an administrative assistant, intern, or more junior business associate for considerably less cost. Additionally, several of the tasks undertaken by Lambert appear duplicative of tasks completed by counsel and for which Plaintiff seeks a fee award. *Compare id.* at 1 (noting that Lambert conducted "research for Amazon takedown" and conducted "research for Twitter Agreement") *with* McCabe Decl., Ex. 2 at 15 (noting that counsel "revised sample takedown letter" and had "call [with] Amazon to follow up on takedown links") *and* 17 (noting counsel had "email correspondence" with "Twitter").

More problematic still, Plaintiff points to no legal authority supporting the proposition that a plaintiff is entitled to hourly reimbursement for the time its *business representatives* expend to ensure a trademark defendant's compliance with a court order. Rather, as Plaintiff's own brief demonstrates, attorneys' costs and fees are the typical remedy for a party forced to ensure a defendant's compliance with a court order. *See* Pl.'s Mem at 5 (citing *Casale v. Kelly*, 710 F. Supp. 2d 347, 367 (S.D.N.Y. 2010) ("A court may award appropriate attorney fees and

costs to a victim of contempt." (quotation marks omitted)); *see also Clissuras*, 2005 WL 3288097, at *2 (awarding attorneys' fees as compensatory sanction). Indeed, even the one case Plaintiff relies on, *A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, 87 F. Supp. 2d 281 (S.D.N.Y. 2000), does not support this claim. Pl.'s Mem at 5. In that case, the Court ordered "a compensatory fine . . . equal to any and all profits from the sale of products advertised on any Internet site" contrary to the court's prior injunction. *Id.* at 296. In reaching that conclusion, the court noted that the "Second Circuit has approved the use of compensatory sanctions based on the defendant's profits." *Id.* (citing *Manhattan Indus., Inc. v. Sweater Bee By Banff, Ltd.*, 885 F.2d 1, 6 (2d Cir. 1989)). Because the facts of that case are inapplicable here, and Plaintiff has not pointed the Court to any authority supporting the type of claim it advances, its request for additional compensatory sanctions is denied.[1]

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's motion for attorney's fees and costs in the amount of $147,715.28 is GRANTED, and its request for additional sanctions is DENIED. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 100.

SO ORDERED.

Dated: July 5, 2018
New York, New York

Edgardo Ramos, U.S.D.J.

---

[1] The Court likewise, denies Plaintiff's request to order Defendants to deliver any infringing products for destruction. Pl.'s Mem. at 6. Defendants need not destroy their herbal products in order to comply with this Court's order. They need only stop selling them under a moniker that infringes on Plaintiff's trademark.

8